343 F.2d 872
 UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, and J. O. Mack, individually and as Executive Board Member of the United Brotherhood of Carpenters and Joiners of America, Appellants and Cross-Appellees,
v.
Malcolm BROWN, Hubert Black, C. E. Klag, and Howard Lane, Appellees and Cross-Appellants.
 No. 7943.
 No. 7974.
 United States Court of Appeals Tenth Circuit.
 March 23, 1965.
 
 COPYRIGHT MATERIAL OMITTED Richard R. Barnes, of Ratner, Mattox & Ratner, Wichita, Kan. (Payne H. Ratner, Wichita, Kan., Francis X. Ward and William A. McGowan, Washington, D. C., on the brief), for appellants and cross-appellees.
 Edward F. Arn and Milo M. Unruh, Wichita, Kan. (Richard F. Mullins, H. R. Kuhn and Louis W. Cates, Wichita, Kan., on the brief), for appellees and cross-appellants.
 Before PICKETT, HILL and SETH, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 This suit was brought in the court below under the provisions, and to obtain relief for alleged violations, of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. §§ 401 et seq. (hereinafter referred to as the Act). The defendants below have appealed in No. 7943 from that portion of the judgment adverse to them and the plaintiffs below have cross-appealed in No. 7974 from the portion of the judgment adverse to them. The plaintiffs-appellees are individual members in good standing of Local Union No. 201 of the United Brotherhood of Carpenters and Joiners of America (hereinafter referred to as Local 201). The defendant-appellant, United Brotherhood of Carpenters and Joiners of America (hereinafter referred to as United Brotherhood), is a national labor union organization with which Local 201 is affiliated. The defendant-appellant, J. O. Mack, is an agent and employee of United Brotherhood and was appointed by it on April 4, 1963, to act as Trustee for Local 201. Local 201 is, of course, the local union organization and it is the only such local union situated in Wichita, Kansas.
 
 
 2
 The record in this case discloses that in the latter part of 1960 Local 201, by letter application to the General President of United Brotherhood, initiated a movement to form and organize a district council which was to be composed of the local unions in six Kansas cities located in the general area around Wichita, Kansas. The primary reason for the organization of such a district council was to attempt to fully utilize the work force on various missile sites in the area and to supply contractors on those sites with an adequate force of carpenters. One of the benefits accruing to members of the local unions by organizing the district council was that the members of a local union could go anywhere in the territory of the council, even into that of another local union, and work without being required to pay the usual "journeymen's permit" or "service permit" fee that would be charged without a district council. Thus, the members of Local 201 would gain substantial benefits from the formation of a district council since Local 201 was the largest local in the area and only three of the missile sites were in its territory.
 
 
 3
 Upon receiving the application, the General President assigned Mack to assist the local unions in forming the proposed district council. In addition, some of the members of Local 201 visited other local unions in the area to explain the advantages of having a district council. The minutes of Local 201 reflect that a special call meeting of the local was held on October 18, 1960, for the purpose of having an election on the issue of whether a district council should be organized in the area. The members of Local 201 voted 53 to 9 in favor of the proposal to organize such a council. At a later meeting on December 29, 1960, the members of Local 201 elected nine delegates to represent them and participate in the organization of the council.
 
 
 4
 Local 201's delegates met with the delegates from the other local unions in the area on January 14, 1961, and organized what is known as the Ark Valley District Council of the United Brotherhood (hereinafter referred to as District Council). At this same meeting, one of the delegates from Local 201 was elected President of the Council and other of the local's delegates were also elected to office. In addition, bylaws for the District Council were drawn up and ultimately approved.[1] Section 3 of those bylaws provides that the District Council "* * * shall be the central governing body and shall have legislative and executive powers on all matters relating to the general interest and welfare of our Local Unions and their members. The Council shall have the power to establish uniform dues * * *." Section 14 provides: "The revenue of this District Council shall be derived from the following sources: Per Capita tax $4.00 for each rank and file member in good standing of each Local Union affiliated with the District Council * * *." Section 31 provides: "The monthly dues in this District Council shall be Eight Dollars ($8.00) * * *." It is not clear from the record but apparently the effect of those provisions was to establish a uniform monthly dues rate for each member of a local union of $8.00 and, out of that amount, a per capita tax of $4.00 per month for each member was to be paid to the District Council. Such a per capita tax is generally paid periodically to the parent labor organization, i. e., the District Council in this case, and is a charge against the local union, not its members, which is in lieu of a dues assessment. It should be noted here that the plaintiffs were not delegates to the January 14 meeting, at which the District Council was organized.
 
 
 5
 Thereafter, a post-card notice was sent to the members of Local 201 advising them that a meeting would be held on January 26, 1961, to "* * * approve the By-Laws and Working Rules of the Ark Valley District Council, and any other Legal Business that may come before the house." The minutes of that meeting reflect a 58 to 26 vote in favor of raising the members' monthly dues by $2.20 per person, or to a total of $8.00 per person as required by the proposed bylaws of the District Council; but do not clearly show whether or not the Council's bylaws were approved by the membership of Local 201.[2] In any event, it was stipulated in open court at the trial below that Local 201 approved the bylaws in question. While the record is silent as to the other plaintiffs, it clearly shows that Klag had knowledge of this meeting but did not attend it. And, some of the members of Local 201 did work in the territory of other local unions without being required to pay a fee for doing so.
 
 
 6
 It is not clear from the record whether increased dues were thereafter collected from the members of Local 201, but it was stipulated that the per capita tax was paid to the District Council. However, before any appreciable time had elapsed a dispute arose over the matter of increasing dues and some of the members of Local 201 questioned the validity of the January 26, 1961, election to raise them. The grievance was submitted to the General President of the United Brotherhood and he determined that it was a valid election. Nevertheless, the same group of members remained unsatisfied and they demanded another election. On July 6, 1961, at a meeting of Local 201 called for that purpose, a motion was made and seconded to raise the dues from $5.80 to $8.00 per month but it was defeated by a secret ballot vote of 91 to 26. The matter of raising the dues again came before a meeting of Local 201 on September 7, 1961, and it was again defeated by a secret ballot vote of 94 to 51. On October 19, 1961, a meeting of Local 201 was called for the purpose of voting to disaffiliate from the District Council. The minutes of that meeting show that the vote was 84 to 29 in favor of withdrawing or disaffiliating from the District Council and, also, that legal proceedings were to be commenced to accomplish that end.
 
 
 7
 United Brotherhood took the position that the constitutions and bylaws of the respective organizations did not authorize or permit the withdrawal of a local union once the local had become affiliated with a district council and therefore it did not recognize the attempted disaffiliation of Local 201. Consequently, on December 16, 1961, appellants issued a written bulletin to all members of Local 201 stating that the local must commence collecting the $8.00 per month dues, beginning January 1, 1962, in compliance with the various letters and telegrams from the national office directing it to remain affiliated with the District Council. A majority of the members of Local 201, who attended the regular meetings and voted, were not in favor of the raise in dues. The controversy between Local 201 and United Brotherhood over such a raise culminated on May 6, 1962, at which time several members of Local 201[3] brought an action against the local's officers in the District Court of Sedgwick County, Kansas, to enjoin the latter from paying any money from increased dues to the District Council. The state court granted the injunction preventing the payment of any money to the District Council for so long as Local 201 remained disaffiliated from it. In so doing, the court found and determined that: There were two provisions for the affiliation of local unions with a district council in the constitution and laws of United Brotherhood; section 26A provided for mandatory affiliation and section 26B, under which Local 201 was affiliated with the District Council, provided for the permissive organization of district councils; Local 201 terminated its affiliation with the District Council on October 19, 1961; and upon such disaffiliation, the dues reverted back to $5.80 but prior to that time, or during the period of affiliation, the dues were governed by the bylaws of the District Council and were $8.00 per month.
 
 
 8
 Subsequent to that decision and on August 2, 1962, the General President of United Brotherhood, acting under section 26B, ordered a mandatory affiliation of Local 201 with the District Council. He stated that the good of the members in the area required the continued existence and effective functioning of the District Council and found that "* * in order to function effectively for the benefit of all members in the area, it is essential that Local Union 201 become and remain a member of the Ark Valley District Council." The record does not show whether Local 201 took any action in response to this directive; but, apparently it did not because on September 24, 1962, the General President again ordered Local 201 to immediately affiliate with the District Council and raise its dues from $5.80 to $8.00 per month as of August 1, 1962. The record is silent as to whether any action was taken in response to this order. On November 27, 1962, the General President, by telegram, again ordered Local 201 to affiliate and "square up their arrearages" in dues to the District Council or he would have "* * * no other recourse than to refer the entire matter to the General Executive Board for whatever action they see fit which could result in suspension of Local 201. * * *" The Local 201 minutes of November 29, 1962, reflect that the members voted 43 to 13, upon motion by Black, to reply to this telegram by stating that at all meetings held in the last six months "* * * the majority of members present have voted against anything pertaining * * *" to the District Council. The record does not show whether such a reply was in fact sent to the General President. But, on December 4, 1962, he issued a final order directing Local 201 to affiliate and raise monthly dues or immediate action would be taken by the General Executive Board. Local 201's response was to appoint a committee of its members for the purpose of preparing to fight the United Brotherhood in court, if necessary, on the matters of affiliation and raise in dues and the committee was authorized to retain counsel.
 
 
 9
 The General President referred the matter to the General Executive Board and a committee thereof was appointed to hold a hearing in Wichita on the dispute. The committee was appointed and the hearing was held pursuant to section 10K of the United Brotherhood's Constitution and Laws.[4] The Executive Committee issued a report on March 26, 1963, wherein it recommended that: (1) Local 201 be placed under the complete supervision of the United Brotherhood's General Office; (2) the supervisor appointed to carry out such supervision should remove all of Local 201's officers and appoint new ones; and (3) the directives of the General President, mentioned above, be carried out in full.
 
 
 10
 On April 1, 1963, the General President notified the president of Local 201 that pursuant to the recommendations of the Executive Board, he had appointed the appellant, Mack, as Trustee of Local 201 and Mack would take complete supervision over all of its affairs, effective April 4, 1963.[5] On the same date Mack issued a notice to all officers and members of Local 201 advising them of his appointment as Trustee of the local and stating that effective immediately all officers of the local were suspended from office; that he was taking over complete control of all of the local union's finances and affairs; and that the regular weekly meetings were changed to two per month. At the local's regular meeting on April 4, Mack formally took over Local 201 and discharged all of the incumbent officers. At this and subsequent meetings of Local 201, Mack also took the following actions: Reduced the meetings from one each week to two each month; appointed new temporary officers; stated that no motions from the floor at future meetings would be entertained; appointed delegates to the District Council and State Labor Council meetings; stated that during the period of trusteeship there would be no voting by members on local union business; stated that by order of the General President, Local 201 was affiliated with the District Council; raised dues from $5.80 per month to $8.00 per month retroactive to August 1, 1962; placed a real estate mortgage upon the local's building to secure a loan that was used to pay the arrearages due the District Council; paid the per capita taxes to the District Council as they thereafter accrued under the increased rate; paid the various monthly bills of the local union; reduced the rent of the District Council for space in the local union's building; negotiated a new labor contract with employers on behalf of the members of the local; and preferred charges of "causing dissension" in the union against some members of Local 201, as a result of which at least one of them, Klag, was suspended from attending meetings for an indefinite period of time. It was stipulated that all of these actions were taken without a vote, secret or otherwise, of the members of Local 201 and that at all times Mack was acting as agent for and representative of United Brotherhood.
 
 
 11
 Thereafter and in compliance with the Trustee's orders, the temporary officers of Local 201 made several payments of local union funds to the District Council. It was stipulated that the sum of $28,647 was paid during the period of the trusteeship. As a result of the first payment, the plaintiffs in the state court action filed an accusation in contempt alleging that such payment to the District Council was in violation of the injunction entered by the court. A hearing was had before the state trial judge and, in holding that the officers of Local 201 were not in contempt, he found: The General President had authority under section 26B[6] of the Constitution and Laws of the United Brotherhood to form district councils in areas not covered by the mandatory provisions of section 26A[7] such authority carried the inherent power to require the local unions in the affected area to affiliate with a district council so formed by order of the General President; and the General President by his order of August 2, 1962, directed all locals in the area, including Local 201, to affiliate with the District Council, which was to continue to exist for the good of the Brotherhood. The state court therefore held that Local 201 was affiliated with the District Council as of August 2, 1962. That decision was affirmed upon appeal by the Supreme Court of Kansas. Roush v. Hodge, 193 Kan. 473, 394 P.2d 101.
 
 
 12
 Prior to the time of the hearing on the contempt accusation and on May 17, 1963, this action was commenced in the court below and it was alleged, inter alia, that the placing of Local 201 under the trusteeship of Mack was invalid and in violation of Section 302 of the Act, 29 U.S. C.A. § 462, and that the heretofore mentioned actions of Mack, as well as others, were themselves violations of various sections of the Act. Plaintiffs prayed for the following relief: A dissolution of the trusteeship; reinstatement of the members of Local 201 alleged to have been unlawfully suspended by Mack as Trustee; a remission of all fines and assessments levied by appellants upon members of Local 201 during the trusteeship; an accounting as provided for in section 501 of the Act, 29 U.S.C.A. § 501, for the payments made to the District Council; and for reasonable attorney fees.
 
 
 13
 It was stipulated at the trial below that the January 26, 1961, vote to raise the monthly dues was by a standing vote, not by secret ballot, and that the trusteeship was imposed for the following reasons: (1) The failure of Local 201 to raise its dues; (2) the failure to affiliate with the District Council; and (3) appellants' contention that certain members of Local 201 were causing dissension in the union.
 
 
 14
 The trial court found and held that: The trusteeship was invalid and should be revoked; the members of Local 201 who were suspended by appellants should be reinstated; all fines paid by them should be remitted by appellants; the increase in dues from $5.80 to $8.00 per month was not by secret ballot and was unlawful; the excess of $2.20 collected each month from the members from and after August 1, 1962, should be remitted and paid to the members; an accounting should be made by appellants; the members of Local 201 should be restored to their right to administer their own affairs and elect officers; appellants should be required to remove the cloud created on the title to the local's building by the mortgage executed by Mack; and jurisdiction should be retained to supervise the accounting and clearing of title to the real estate. Judgment was entered accordingly and defendants below appealed. The trial court also denied plaintiffs' claim for attorney fees and further found and held: The state court's determination that Local 201 became affiliated with the District Council by reason of the General President's directive of August 2, 1962, was res judicata and therefore Local 201 was obligated to pay its "per capita tax" owing to the District Council; and for this reason the money paid to the District Council at Mack's direction was a valid debt and should not be recovered by plaintiffs. Judgment was rendered in accordance therewith and the plaintiffs cross-appealed.
 
 
 15
 Appellants contend that the judgment must be reversed and the action dismissed because plaintiffs have not exhausted the administrative remedy available to them under the provisions of section 304(a) of the Act, 29 U.S.C.A. § 464(a).[8] The argument is that plaintiffs were required to first file a complaint with the Secretary of Labor in accordance with section 304(a) and exhaust that remedy before proceeding in court with this lawsuit. There is authority to support that argument. E. g., Cox v. Hutcheson, 204 F.Supp. 442 (S.D.Ind. 1962); Flaherty v. McDonald, 183 F. Supp. 300 (S.D.Cal.1960) Rizzo v. Ammond, 182 F.Supp. 456 (D.N.J.1960). But, there is also authority supporting the view that a local union member need not exhaust the administrative remedy provided in section 304(a) before bringing suit in the district court under that section. Parks v. International Brotherhood of Electrical Workers, 4 Cir., 314 F.2d 886, 923, 924, cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142; Hotel and Restaurant Employees and Bartenders International Union v. Del Valle, 1 Cir., 328 F.2d 885, 886, cert. denied, 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86; Forline v. Helpers Local No. 42, 211 F.Supp. 315 (E.D.Pa.1962); Vars v. International Brotherhood of Boilermakers, 204 F.Supp. 245 (D.Conn.1962); Executive Board, Local Union No. 28, I. B. E. W. v. International Brotherhood of Electrical Workers, 184 F.Supp. 649 (D.Md.1960). We believe the latter view is the better rule for the reasons set forth in Judge Watkins' excellent analysis of section 304(a) in the Executive Board case, supra, 184 F.Supp. at 655-659.[9] We can add nothing to that discussion and accordingly hold that appellants were not required to exhaust the administrative remedy provided in section 304(a) before instituting this action.
 
 
 16
 Plaintiffs assert that in any event, they have complied with the statute and exhausted the administrative remedy by complaint to the Secretary of Labor, which complaint was denied and they were advised to seek redress in the district court. It is true that a complaint was made to the Secretary but it appears from the record that plaintiffs were then complaining of alleged violations of section 101(a) (3) (A) of the Act, 29 U.S.C.A. § 411(a) (3) (A), and section 303(a) of the Act, 29 U.S.C.A. § 463(a). The first section relates to the raising of local dues upon a majority vote by secret ballot and the latter section relates to improper activities by a trustee during the period of trusteeship. Neither of them are concerned with the validity of the trusteeship and the record does not show that the specific issue of validity was ever presented to the Secretary. And, it should be noted here that the enforcement provisions of section 304(a) are inapplicable to remedy alleged violations of section 101 or, for that matter, any other sections except those contained in subchapter IV, concerning trusteeships. Cf. Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190. We cannot therefore conclude on the record before us that the plaintiffs have exhausted their administrative remedy but must rest our decision on the basis that such remedy need not be exhausted.
 
 
 17
 Appellants also contend that the judgment must be reversed and the action dismissed for the reason that the plaintiffs have failed to exhaust the internal remedies afforded by United Brotherhood's Constitution and Laws as required by section 101(a) (4) of the Act, 29 U.S.C.A. § 411(a) (4). We do not agree. Section 101(a) (4) is applicable only where individual violations of the so-called Bill of Rights provisions are alleged and does not apply where, as here, the validity of a trusteeship is being challenged. As the Supreme Court said in Calhoon v. Harvey, supra, 379 U.S. at 138, 85 S.Ct. at 295: "Jurisdiction of the District Court under § 102 of Title I depends entirely upon whether this complaint showed a violation of rights guaranteed by § 101(a) (1), * * *." In any event, the requirement that internal remedies be exhausted is subject to certain exceptions that are applicable here. E. g., Calagaz v. Calhoon, 5 Cir., 309 F.2d 248; Harris v. International Longshoremen's Association, Local 1291, 3 Cir., 321 F.2d 801; Libutti v. Di Brizzi, 2 Cir., 337 F.2d 216.
 
 
 18
 The basic issue in this case is, of course, the validity of the trusteeship imposed upon Local 201 by United Brotherhood. That issue must be determined by reference to section 302 of the Act, 29 U.S.C.A. § 462, which provides that a trusteeeship may be established and administered by a labor organization over its subordinate body "* * * only in accordance with the constitution and bylaws of the organization which has assumed trusteeship * * *." The statute is mandatory in its terms and has nullified or removed whatever inherent power an international union had prior to its enactment to impose such a trusteeship. Unless the constitution and by-laws of the parent organization make provision therefor, such organization has no power to establish a trusteeship over a subordinate body. Flight Engineers International Association v. Continental Air Lines, Inc., 9 Cir., 297 F.2d 397, cert. denied, 369 U.S. 871, 82 S.Ct. 1141, 8 L.Ed.2d 276. An examination of the constitution and bylaws of United Brotherhood discloses that there is no specific provision authorizing it to impose a trusteeship on any of its subordinate local unions.
 
 
 19
 It is suggested, however, that United Brotherhood's power to impose the trusteeship in question may be derived from the general authority granted to it in sections 6B[10] and 6D[11] of its Constitution and Laws, as implemented by the provision in section 10K, which empowers the General Executive Board "* * * to take such action as is necessary and proper for the welfare * *" of the national union. Appellant's argument is that while its constitution and laws do not specifically grant it the authority to impose trusteeships, such authority may be implied from sections, 6B, 6D and 10K and that implied authority is sufficient. We do not agree. The legislative history of section 302 of the Act clearly discloses an intent on the part of Congress "* * * that there should be a `limitation on the right of internationals to place local unions in trusteeship'" and one of those limitations was that "* * * the trusteeship must conform to the constitution and bylaws of the labor organization." 2 U.S.Code Cong. & Adm. News, 86th Cong., 1st Sess., 1959, pp. 2333-2334. Obviously, a trusteeship cannot conform to the constitution and bylaws of a labor organization where, as here, the constitution and bylaws make no provision for trusteeships. We think the statute not only contemplates, but requires, more than some vague general reference to the effect that the parent organization shall have power to take such action as is necessary and proper for its welfare. It requires at the very least that the organization's constitution and bylaws set forth the circumstances under which a trusteeship may be established over its local unions and the manner or procedure in which it is to be imposed. It goes without saying, of course, that the constitution and bylaws in that respect must not conflict with applicable provisions of the Act.
 
 
 20
 A second limitation upon the imposition of trusteeships is that under section 302 it must be for one of the following purposes: (1) To correct corruption or financial malpractice; (2) to assure the performance of collective bargaining agreements or other duties of a bargaining representative; or (3) to restore democratic procedures, or otherwise carry out the legitimate objects of the labor organization. Congress recognized that the use of trusteeships by an international union is a particularly effective device for the maintenance of order within the organization and that "* * * they have been widely used to prevent corruption, mismanagement of union funds, violation of collective bargaining agreements, infiltration of Communists; in short, to preserve the integrity and stability of the organization itself. * * *" But, Congress also recognized that "* * * in some instances trusteeships have been used as a means of consolidating the power of corrupt union officers, plundering and dissipating the resources of local unions, and preventing the growth of competing political elements within the organization." 2 U.S. Code Cong. & Adm. News, 86th Cong., 1st Sess., 1959, p. 2333. To preserve the legitimate use of trusteeships, Congress in enacting section 302 enumerated the purposes for which a trusteeship could be imposed in language of a broad and general nature. However, in order to prevent their misuse, Congress obviously intended those purposes to have limitations as well and therefore in determining whether a particular case meets the test, the statute must be construed in the light of the various other provisions of the Act.
 
 
 21
 The purpose of the Act as a whole is not only to stop and prevent outrageous conduct by thugs and gangsters but also to stop lesser forms of objectionable conduct by those in positions of trust and to protect democratic processes within union organizations. 29 U.S.C.A. § 401; Nelson v. Johnson, 212 F.Supp. 233 (D.Minn.1962), aff'd, 8 Cir., 325 F.2d 646; Gartner v. Soloner, 220 F.Supp. 115 (E.D.Pa.1963). To accomplish that purpose, a "Bill of Rights of Members of Labor Organizations" was incorporated into the Act. It provides, among other things, that every member of a union shall have equal rights and privileges within the organization to nominate candidates, vote in union elections, attend union meetings and participate in the voting and deliberations at such meetings, 29 U.S.C.A. § 411(a) (1); that every union member shall have the right to assemble and meet freely with other members and express his views at meetings of the organization, 29 U.S.C.A. § 411(a) (2); that the rates of dues by members of a union in effect on September 14, 1959, shall not be increased in the case of a local union except upon a majority vote by a secret ballot and after reasonable notice and in the case of a national or international, by a majority vote of delegates at a regular convention, 29 U.S.C.A. § 411(a) (3); that every member of a union shall have the right to institute an action in court or before an administrative agency under appropriate circumstances, 29 U.S.C.A. § 411 (a) (4); and that every member shall have the right to certain safeguards before being fined, suspended, expelled or otherwise disciplined, 29 U.S.C.A. § 411 (a) (5). Thus, the rights of individual members of a labor union are protected by federal statute with a view to allowing those members to conduct local matters with a minimum of outside interference. In short, local affairs are to be governed by local members under democratic processes.
 
 
 22
 With this background in mind we turn to a consideration of the purposes for which the instant trusteeship was imposed. The trial court found, and the evidence confirms, that United Brotherhood established the trusteeship over Local 201 because it would not affiliate with the District Council and would not raise its dues. The court also found, and the evidence shows, that it was not imposed because of "dissension" within the local union. The result is that the trusteeship was established for the purposes of affiliating Local 201 with the District Council and raising the dues of its membership. In determining whether these are proper purposes under section 302, we must remember that a majority of the local membership consistently voted against having anything to do with the District Council and on at least two occasions, by secret ballot, voted against the proposal to raise the monthly dues. We must also remember that the provisions of 29 U.S.C.A. § 411 were designed to afford them protection in that respect. Under these circumstances, we have no hesitancy in holding that the purposes for which this trusteeship was imposed do not fall within any of the categories set forth in section 302. Beyond question, they do not come under the category of correcting corruption or financial malpractice and have nothing whatever to do with collective bargaining. It is also clear to us that the specified purposes are not within the category of restoring democratic processes or otherwise carrying out the legitimate objects of United Brotherhood. To the contrary, the imposition of the trusteeship in question could have no other effect than to stifle democratic processes by, in effect, voiding the results of the properly conducted elections on the issues involved. If we were to hold that the asserted purposes were proper, this court would be placed in the position of allowing a national union to establish a trusteeship over a local union because the members of the local union insisted upon exercising a right granted them by statute. This would in effect nullify and frustrate not only the plain purpose but the express terms of the Act.
 
 
 23
 It is true that there is a presumption as to the validity of a trusteeship for a period of eighteen months from the date of its establishment. 29 U.S.C.A. § 464(c). But, it is quite clear from the statute itself and from the legislative history that Congress intended for the presumption of validity to be available only where the trusteeship has been established "* * * in conformity with the procedural requirements of its [the labor organization's] constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws * * *." 29 U.S.C.A. § 464(c); 2 U.S.Code Cong. & Adm.News, 86th Cong., 1st Sess., 1959, p. 2334. Since the trusteeship in this case was not established in conformity with the constitution and bylaws, the presumption is not available to appellants.
 
 
 24
 Appellants contend that even if we find the trusteeship invalid under the provisions of the Act, the judgment must still be reversed because it was determined to be valid in the prior state court action and that determination is binding upon this court under the doctrine of res judicata. The trouble is that the state court made no such determination. The trusteeship had not been imposed over Local 201 at the time judgment was entered granting the injunction in the state court and therefore its validity could not possibly have been determined. It is true that the trusteeship was established prior to the time the contempt accusation was filed in the state court. But, this lawsuit was also filed prior to that time and in holding that the injunctive order had not been violated the state trial judge said: "The actions of the United Brotherhood in the placing of Local 201 under the direction of a trustee, and the subsequent actions of the trustee and his agents or appointees have been challenged in another legal action that is pending in the United States District Court, and such questions are no part of this action, and the legality of same is not before this court." It is apparent that the state court did not purport to pass upon the validity of the trusteeship and therefore appellants' claim of res judicata is without merit.
 
 
 25
 We conclude that the trusteeship in question is invalid under the provisions of section 302 of the Act for two distinct and separate reasons. Having so concluded, it necessarily follows that the trusteeship was void from its inception and therefore the challenged actions of the Trustee during the period of the trusteeship were also unauthorized and invalid unless they can be sustained on some other legal basis. That, of course, brings us to the cross-appeal by the plaintiffs below.
 
 
 26
 The first point raised on the cross-appeal relates to the right of the plaintiffs to recover, on behalf of the members of Local 201, the sum of $28,647 paid out of the local union's funds to the District Council. It is clear from the record that the temporary officers of Local 201 made several payments to the District Council out of local union funds upon the orders and at the directions of the Trustee, Mack. It is also clear that the first payment in the amount of $11,294 represented the arrearages due the District Council from Local 201 for its per capita tax for the period from October, 1962, to March, 1963. However, it is not clear from the record whether the additional payments to the District Council totaled $28,647 or whether that figure includes the $11,294 payment. Nor is it clear what these additional payments were for although there is some indication in colloquy between court and counsel at the trial of the case that they represented the per capita tax due to the District Council from Local 201 for the period from and after March, 1963. The lower court made no findings of fact on these matters and the case must be remanded for that purpose. The question we must resolve then is how extensive those findings must be upon remand.
 
 
 27
 The plaintiffs contend that the trial court erred in denying recovery of the $28,647 because the payments of that sum to the District Council were made in violation of section 501 of the Act, 29 U.S.C.A. § 501, and without the approval, consent or vote of the local union members. The argument is that the payments were unauthorized because they were made upon the orders of a Trustee who was invalidly appointed and, more than that, were made in violation of the trust or fiduciary obligations imposed upon labor union representatives by section 501(a). Plaintiffs point out that they obtained leave of the court below upon verified application for good cause shown in accordance with the requirements of section 501(b) and argue that they are therefore entitled to an accounting of the $28,647 under that subsection.
 
 
 28
 The court below denied recovery of the payments made to the District Council on the basis that the litigation in the state courts had established that the payments under the trusteeship constituted a legal debt owing from Local 201 to the District Council and that such determination was conclusive in this case under the doctrine of res judicata, thereby precluding any such recovery. However, the court also held that there had been a raise in local dues from $5.80 per month to $8.00 per month in violation of section 101(a) (3) of the Act, 29 U.S. C.A. § 411(a) (3) and therefore an accounting must be made by the defendants as to the $2.20 increase. It is apparent that these rulings are in conflict with each other. To resolve that conflict, we must first determine whether res judicata is applicable.
 
 
 29
 This court has recently held that under "* * * the doctrine of res judicata the final judgment of a court of competent jurisdiction upon the merits of a controversy is conclusive as to the parties to the litigation and their privies and it is a bar to any further litigation upon the same cause of action, either before the same or any other tribunal. * * *" Mid-Continent Casualty Company v. Everett, 10 Cir., 340 F.2d 65, 69. The state court litigation with which we are concerned here was in a court of competent jurisdiction and the judgments rendered have become final. There is admittedly privity between the parties to the state court proceedings and the parties to this action. Thus, the doctrine of res judicata is applicable here unless there is merit to the further argument made by plaintiffs that its application is precluded under the law by reason of changed circumstances and equitable considerations.
 
 
 30
 Assuming, without deciding, that the plaintiffs' argument is a correct statement of the law, it is not controlling here. There is nothing in the record to show a sufficient change in circumstances since the entry of the state court judgments. It is true that the trusteeship has been held invalid but that was not an issue in the state court proceedings and has no bearing upon the issues decided therein. There is, likewise, an insufficient showing of equitable considerations. Plaintiffs seem to assume that all of the equities are in their favor and blandly assert that to apply res judicata in this case "* * * is to oust equity from its historical function of serving justice." But, we cannot ignore the fact that Local 201 was the prime influence in organizing the District Council, participated in its organization and even accepted the benefits of its existence by going into the territory of other local unions to work on projects located there without being required to pay the usual permit fee to such local unions. Under these circumstances, we must conclude that the doctrine of res judicata is fully applicable and the issues determined in the state court proceedings are conclusive on the parties to this action.
 
 
 31
 An examination of the state court proceedings show that the state courts made the following rulings: The General President of United Brotherhood was given authority by section 26B of the Constitution and Laws to form district councils in areas not covered by section 26A; this authority carried with it the inherent power to require local unions in the affected area to affiliate with a district council formed by the General President; on August 2, 1962, the General President exercised that power and ordered Local 201, and other local unions in the area, to affiliate with the District Council; by reason of such order Local 201 became affiliated with the District Council as of August 2, 1962; and the temporary officers of Local 201 did not violate the injunctive order and were not in contempt of that order when they made the payment of $11,294 to the District Council. Implicit in the latter ruling, is a holding and determination by the state court that such payment was validly made to the District Council. Right or wrong, those rulings are binding here and may not be relitigated in this case. Therefore, there can be no question in this case but what Local 201 is affiliated with the District Council and has been so affiliated since August 2, 1962. And there can be no question but what the $11,294 payment was validly made to the District Council.
 
 
 32
 It is suggested, however, that unless the so-called increased dues of $2.20 are ordered returned to the members of Local 201, the result will be a raise or increase in local dues without a majority vote by secret ballot after reasonable notice, in violation of section 101 (a) (3). If this be so, it is directly attributable to the attempt to litigate the issues in two different forums. But, we are not persuaded that such is the case for there is a clear distinction between local "dues", as that term is used in the statute, and "per capita tax", which is involved in the instant lawsuit. Ranes v. Office Employees International Union, Local No. 28, 7 Cir., 317 F.2d 915. As the court observed in that case, the right granted to local union members under section 101(a) (3) cannot be used to veto the valid act of an international union. Thus, as a result of being affiliated with United Brotherhood, Local 201 is bound by the Brotherhood's Constitution and Laws which have been, rightly or wrongly, interpreted so as to authorize the General President to form a district council. And, as a result of being affiliated with a District Council so formed, Local 201 is bound by the Council's bylaws providing for the payment by the local of per capita taxes.
 
 
 33
 We therefore conclude that the $11,294 payment to the District Council may not be questioned in this proceeding. But, that is not true as to the payments made subsequent to the judgment in the state court proceedings because the state court did not rule upon them and the record does not clearly show that those payments were for per capita tax. It is alleged that they were made in violation of section 501(a) and consequently plaintiffs are entitled to an accounting of those payments under the provisions of section 501(b). If it should develop on the accounting that the payments were for per capita tax no recovery may be had by plaintiffs. If it should develop that they were not for per capita tax, the plaintiffs should recover the amount so paid unless the District Council desires to intervene and can prove a meritorious claim thereto.
 
 
 34
 The second point raised on the cross-appeal is whether plaintiffs are entitled to attorney fees. The trial court denied such fees on the ground that Title I of the Act, 29 U.S.C.A. §§ 411-414, makes no provision for the allowance thereof. However they may be allowed under section 501(b) which provides, in part: "* * * The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation." This statute leaves the matter of the allowance of counsel fees in the sound discretion of the district court and therefore upon remand and the accounting the trial judge must first determine whether plaintiffs are entitled to any such fees under the provision quoted above and, if so, the amount thereof.
 
 
 35
 Other contentions made by the parties have not been overlooked but have been determined to be without merit.
 
 
 36
 The judgment below insofar as it may require an accounting of the $11,294 payment to the District Council and denies plaintiffs' claim for attorney fees is reversed and the case is remanded for further proceedings in accordance with this opinion. In all other respects, the judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Section 26C of the United Brotherhood's Constitution and Laws provides that:
 "District Council shall have the power to make Working and Trade Rules for the government of the Local Unions and the Members of the United Brotherhood working in their districts. Also, Laws governing strike and other donations except sick donations, which shall in no way conflict with the Constitution and Laws of the United Brotherhood, and must be adopted by a referendum vote of the members of the Local Unions affiliated with the District Council and approved by the First General Vice-President before becoming law, and their representation shall be according to membership."
 
 
 [2]
 The pertinent portion of the minutes reads as follows:
 "The membership is voting on the change of By-Laws of District Council increasing the dues $2.20 making the dues $8.00 per month and if it loses they will collect the 1% of a members weekly salary."
 
 
 [3]
 Appellees Klag, Black and Lane were among the plaintiffs in the suit. Appellee Brown was not but he apparently is no longer a party to the instant action
 
 
 [4]
 That section reads as follows:
 "Whenever it appears to the satisfaction of the General President that any Local Union or member thereof, or any District, State or Provincial Council is acting contrary to the welfare of the United Brotherhood of Carpenters and Joiners of America, or that the interest of the United Brotherhood otherwise requires, he may appoint a committee to hold a hearing, after due notice to such subordinate body or member. Upon completion of the hearing, the committee shall report its findings and recommendations to the General Executive Board and to the member or subordinate body involved. The General Executive Board is empowered to take such action as is necessary and proper for the welfare of the United Brotherhood of Carpenters and Joiners of America, subject, however, to the right of appeal to the next General Convention."
 
 
 [5]
 A "trusteeship" is defined in section 3(h) of the Act, 29 U.S.C.A. § 402(h), as follows:
 "`Trusteeship' means any receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws."
 
 
 [6]
 Section 26B provides:
 "District Councils may be formed in localities other than in cities where two or more Local Unions in adjoining territory request it, or when in the opinion of the General President the good of the United Brotherhood requires it. The District Council so formed shall be governed by the same General Laws governing District Councils in cities."
 
 
 [7]
 Section 26A reads as follows:
 "Where there are two or more Local Unions located in one city, they must be represented in a Carpenters' District Council composed exclusively of delegates from Local Unions of the United Brotherhood; and they shall be governed by the uniform District Council By-Laws and have power to make laws and trade rules which is no way conflict with the Constitution and Laws of the United Brotherhood, and approved by the Local Unions and the First General Vice-President. The General President shall have power to order such Local Unions to affiliate with such District Council, and to determine the jurisdictional area and trade autonomy of such District Council, subject to appeal."
 
 
 [8]
 That section provides as follows:
 "Upon the written complaint of any member or subordinate body of a labor organization alleging that such organization has violated the provisions of this subchapter (except section 461 of this title) the Secretary shall investigate the complaint and if the Secretary finds probable cause to believe that such violation has occurred and has not been remedied he shall, without disclosing the identity of the complainant, bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate. Any member or subordinate body of a labor organization affected by any violation of this subchapter (except section 461 of this title) may bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate."
 
 
 [9]
 See also the discussions in Anderson, Landrum-Griffin and the Trusteeship Imbroglio, 71 Yale L.J. 1460, 1498-1500; Symposium on the Labor-Management Reporting and Disclosure Act of 1959 (Slovenko Ed.), pp. 453-454, 460, 468-471; Levitan, Union Trusteeships — The Federal Law and an Inventory, 11 Lab. L.J. 1067, 1074; Shneidman, Union Trusteeships and Section 304(a) of the Landrum-Griffin Act, 14 Lab.L.J. 553-563
 
 
 [10]
 "The right is reserved to the United Brotherhood through the International Body to regulate and determine all matters pertaining to the various branches and subdivisions of the trade."
 
 
 [11]
 "The right is reserved to establish jurisdiction over any Local or Auxiliary Unions, District, State or Provincial Councils whose affairs are conducted in such a manner as to be detrimental to the welfare of the members and to the best interests of the International Body."