SERVICE EMPLOYEES INTERNA-
TIONAL UNION, LOCAL NO. 87, on
behalf of its members, and as exclu-
sive collective bargaining representa-
tive; Richard Leung, Ahmed Abozayd,
Olga Miranda, Jose Beltran, Carmen
Cortez, James Davis, Jose Espinoza–
Jarqui, Abdul Ismail, Irma Manzana-
rez, Gustavo Rendon, Ramiro Rodri-
guez, Sam Siu, Mudaffar Algahim,
Gregory Carter, Kam Sing Chan, in
their official capacities as Local Un-
ion officers and fiduciaries, and Mi-
riam Vides, Mauricio Vides, Emilio
Manzanares, Alfredo Rodriguez, indi-
vidually, as rank and file members of
SEIU Local 87, Plaintiffs,

v.

SERVICE EMPLOYEES INTERNA-
TIONAL UNION, LOCAL NO. 1877;
Service Employees International Un-
ion, AFL–CIO, and Does 1 to 10, inclu-
sive, Defendants.

No. C 02–0520 WHA.

United States District Court,
N.D. California.

Sept. 18, 2002.

Dan Siegel, Noreen Farrell, Siegel & Yee, Oakland, CA, for Plaintiffs.

Eileen Goldsmith, Peter D. Nussbaum, Alshuler Berzon Nussbaum Rubin & De-Main, San Francisco, CA, for Defendants.

## ORDER GRANTING SERVICE EMPLOYEES INTERNATIONAL UNION'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ALSUP, District Judge.

### INTRODUCTION

Plaintiffs are a local union of building service employees in San Francisco, and its elected offices, executive board members, trustees, and rank and file members. They bring suit to challenge the actions by defendants Service Employees International Union and another local union to merge their union with the other local union and to place a trusteeship over it. Defendant SEIU moves for partial summary judgment as to all of plaintiffs' claims and as to its own counterclaim for injunctive relief enforcing the trusteeship. This order GRANTS defendant's motion as to plaintiffs' first three claims relating to the validity of the merger, plaintiff's fourth claim relating to the trusteeship, and defendants' counterclaim to enforce the trusteeship.

### STATEMENT

Defendant Service Employees International Union ("SEIU") is a labor organization within the meaning of the National Labor Relations Act, 29 U.S.C. 152(5) (Compl.¶ 13). Local 87 is a labor organization within the meaning of the NLRA and is a chartered local union of SEIU (¶ 8). The SEIU Constitution and Bylaws are binding on Local 87 (Medina Decl.¶ 2, Exh. A, Art. III § 2(a), Art. XXVII § 3).

In October 2001, SEIU notified Local 87's leadership that it was considering merging Local 87 and other SEIU local unions into SEIU Local 1877, as a single statewide SEIU local (First Leung Decl. ¶ 10.) SEIU was considering the merger in furtherance of the "New Strength Unity Plan," adopted at its 2000 Convention (First Baird Decl. Exh. 3 at 3–5). On November 15 and 16, 2001, SEIU conducted hearings on the matter (First Leung Decl. ¶ 13). At the hearing, Local 87 members voiced their strong opposition to the merger, and presented a report supporting their opposition, entitled "Proposal for a Northern California Building Service Local" (*Ibid.*, Exh. 2). At its December 2001 membership meeting, Local 87's membership voted against the proposal for a statewide local (*Id.* ¶ 15).

On December 8, Local 87 members instructed their officers not to negotiate with the International and instead [to] " fight the merger" (Second Baird Decl. Exh. 2 at 6). On January 13, 2002, SEIU International President Andrew Stern appointed four representatives to monitor and assist in the implementation of the merger directive at Local 87's offices (First Leung Decl. ¶ 17). Stern directed "the Officers and Staff of Local 87 to cooperate fully" with these personal representatives, including, but not limited to "giving them advance notice of any meetings of the Local, its officers or any affiliated bodies at which official business is to be conducted, providing unhampered access to the Local's office, and submitting all checks or other disbursement of Local Union funds for their review prior to issuance" (*Id.* Exh. 4).

The parties dispute whether Local 87's officers and executive board members cooperated with Stern's personal representatives. Plaintiffs claim that they provided Stern's personal representatives full access to Local 87's offices and financial records

and invited them to Local 87 meetings (First Leung Decl. ¶ 18; Miranda Decl. ¶ 9; Abozayd Decl. ¶ 10). Defendant SEIU claims that the Board engaged in conduct to thwart the merger by taking the actions they claim provided the proper purposes for the trusteeship, as discussed below.

On or about January 13, 2002, SEIU's Executive Board adopted the hearing officer's recommendation that Local 87 should be merged into Local 1877 (First Leung Decl. ¶ 16). Around the same time, Local 87's leadership had begun to meet with representatives of SEIU and Local 1877 to discuss the terms of the merger (First Leung Decl. ¶ 14; Miranda Decl. ¶ 7; Abozayd Decl. ¶ 8). Local 87's leadership indicated that it would not oppose the merger if the membership supported it (Miranda Decl. ¶ 7; Abozayd Decl. ¶ 8).

On or about January 22, 2002, SEIU advised Local 87 of the terms of its imposed merger. In a letter from President Stern, SEIU told Local 87 officers that they were obligated to comply with the merger decision and to cooperate in the transition process, and directed them to "cease and desist any activity that undermines the merger process" (Monterroso Decl. ¶ 10, Exh. 5). SEIU ordered Local 87's officers and executive board members to recommend these terms to their membership (First Leung Decl. ¶ 21; Miranda Decl. ¶¶ 10–11). Local 87's officers and executive board members refused to recommend the merger to the membership because the proposed final terms did not include several items they had proposed (First Leung Decl. ¶ 22; Miranda Decl. ¶ 11; Abozayd Decl. ¶ 13). Local 87's leaders agreed to send a neutral notice to the membership calling for a membership meeting to discuss and vote on the proposed terms of the merger (First Leung Decl. ¶ 22, Exh. 7).

On January 23, 2002, SEIU representatives met with the Local 87 Executive Board to discuss any concerns the Board members had about the merger. The Executive Board stated that it voted not to "recognize the merger" and not to "cooperate with the merger" (Monterroso Decl. ¶ 15; First Baird Decl. ¶ 11). Local 87's leadership agreed to prepare a final counter-offer of merger terms and to present their proposal to legal counsel for SEIU on January 26 (First Leung Decl. ¶¶ 23–24; Miranda Decl. ¶ 12). The attorney asked to reschedule the meeting to the morning of January 28. Leung requested that Weinberg confirm with the SEIU International that the delay of their meeting was acceptable. He confirmed that the International approved the delay of the meeting (First Leung Decl. ¶ 24).

\* \* \* \* \* \*

On January 25, 2002, President Stern was advised of the actions Local 87 had taken, and on January 27, issued an "emergency" trusteeship order pursuant to his right under SEIU's Constitution (Medina Decl. Exh. A, Art. VIII, § 7(a)). On January 28, 2002, the "emergency" trusteeship went into effect. SEIU cancelled the membership meeting scheduled for that afternoon, removed Local 87's officers from office, seized control of Local 87's building at 240 Golden Gate Avenue in San Francisco, and denied Local 87 executive board members entry (*Id.* ¶¶ 26–27).

SEIU's January 28, 2002 "Emergency" Trusteeship Notice makes it clear that the trusteeship was imposed because of Local 87's opposition to the proposed merger (Exh. 8). SEIU charged that Local 87's officers refused to recognize the merger, misinformed members, and used scare tactics to mislead members; failed to supply the International President's personal representatives with information necessary to develop an orderly merger transition; interfered with the local's finances and attempted to disrupt Local 87's collective bargaining relationships by encouraging, participating or permitting the circulation of dues revocation notices; engaged in dual unionism by taking steps to disaffiliate from SEIU and approaching another union; and engaged in financial malpractice by using local union resources to block the merger.

\* \* \* \* \* \*

SEIU's constitution required the International Executive Board ("IEB") to conduct a hearing within 30 days of imposing an emergency trusteeship to determine if the imposition of the emergency trusteeship was appropriate and whether the trusteeship should continue (Medina Decl. Exh. A, Art. VIII § 7(f)). On February 12, a hearing was conducted before an IEB hearing officer. The hearing officer upheld the decision to impose the emergency trusteeship, concluding that each of the charges discussed in the notice of the emergency trusteeship had been established (First Baird Decl. Exh. 3 at 1). He also determined that an ongoing trusteeship was justified because of new evidence SEIU discovered after imposing the trusteeship. This evidence included that the local union's grievance handling was in "disarray" and that the local union membership voted to provide its officers with severance pay in the event that their jobs were eliminated in the merger. The IEB hearing officer found that plaintiffs never had been negotiating in good faith with SEIU's representatives (*Id.* at 9).

Following the hearing on February 12, 2002, SEIU adopted the hearing officer's report finding that the emergency trusteeship was properly imposed and that the trusteeship should be continued for the following reasons:

(1) Local 87's officers had not negotiated in good faith with SEIU over the terms the proposed merger;

(2) Local 87's officers failed to stop the circulation of dues deduction authorization revocation notices and, after the trusteeship was imposed, circulated such notices themselves;

(3) Local 87's officers knew about and condoned contacts with another union to discuss other options to their affiliation with SEIU;

(4) Local 87's grievance handling and hiring hall operations were in "disarray;" and

(5) Local 87's Executive Board hired counsel to assist it in its response to the merger proposal and proposed severance agreements for local officials.

On January 29, plaintiffs filed their complaint in this case, challenging both the merger decision and the trusteeship. Two weeks later plaintiffs applied to this Court for a temporary restraining order. On February 22, this Court denied that request. On April 12, this Court denied plaintiffs' motion to continue proceedings on its motion for a preliminary injunction. On August 8, 2002, defendant SEIU filed this motion.

## ANALYSIS

### Legal Standard

Summary judgment shall be rendered if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Summary judgment is not granted if the dispute about a material fact is "genuine"—that is, if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The evidence, and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987).

■ The moving party "has both the initial burden of production and ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.2000). "Credibility determinations, weighing evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for directed verdict; evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

On a motion by the party without the burden of proof at trial, the party may carry its initial burden by either of two methods. "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1106. Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted). Summary judgment for a defendant is appropriate when plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548.

### Validity of the Merger of Local 87 into Local 1877

Plaintiffs' first three claims for relief in their complaint challenge SEIU's decision

to merge Local 87 into Local 1877 (Compl. ¶¶ 39–47). Defendant SEIU seeks summary judgment on those claims. In its opposition to SEIU's motion, plaintiffs do not oppose those arguments (Opp. at 10–15). Under FRCP 56(e), a party cannot rest on the allegations in its pleadings in response to a properly supported summary judgment motion:

> When a motion is made and supported as provided by this rule, an adverse party may not rest upon mere allegations and denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by this rule must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Here, plaintiffs have failed in any way to oppose the material facts and legal arguments relating to the merger raised by SEIU in its motion.

The Court finds that defendant SEIU properly has raised the issue of its merger decision in its motion for summary judgment. SEIU argues that in deciding to merge Local 87 into Local 1877, it acted reasonably and in good faith, and complied with federal labor law and its own constitution and bylaws. Accordingly, this motion GRANTS defendant SEIU's motion for partial summary judgment with regard to plaintiffs' claims challenging the merger.

### Plaintiffs' Burden to Challenge SEIU's Purpose for Imposing the Trusteeship

A threshold issue is the evidentiary standard plaintiffs must meet to defeat SEIU's motion for partial summary judgment regarding the trusteeship. A labor organization's trusteeship of an affiliate is entitled to a presumption of validity for 18 months if it has been "established ... in conformity with the procedural require-

ments of its constitution and bylaws and authorized or ratified after a fair hearing." 29 U.S.C. 464(c). The effect of this presumption is to shift the burden of proof to plaintiffs to show by "clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under [29 U.S.C. 462]." *Ibid.* Thus, to overcome summary judgment plaintiffs must establish that there are genuine disputes of material fact which if resolved in their favor by a reasonable fact-finder, would meet this heightened burden of proof. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Here, plaintiffs do not dispute that the emergency trusteeship was imposed in accordance with SEIU's constitution and bylaws and was ratified after a fair internal hearing by the IEB. Accordingly, the trusteeship is entitled to a presumption of validity unless plaintiffs can prove by "clear and convincing evidence" that the trusteeship was not established or maintained in good faith or for a purpose allowable under the LMRDA. *See* 29 U.S.C. 464(c). Plaintiffs contend that there are issues of material fact regarding whether SEIU imposed the emergency trusteeship and maintained the trusteeship for an improper purpose. Once an emergency trusteeship has been ratified following a fair hearing, however, the facts underlying the initial decision to impose the emergency trusteeship only are material to whether plaintiffs are entitled to retroactive relief for the period between the defective imposition of an emergency trusteeship and the subsequent "curative hearing and vote." *Mason Tenders Dist. Council v. Laborers Int'l Union of N. America,* 884 F.Supp. 823, 836 (S.D.N.Y.1995). Here, plaintiffs have made no claim for damages (Compl. ¶ 51). Accordingly, any disputes concerning the facts underlying SEIU's President Andrew Stern's January 27 deci-

sion to place Local 87 in an emergency trusteeship are not "material." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The only remaining issue is whether plaintiffs can create a material dispute of fact as to the proper purpose for continuing the trusteeship.

\* \* \* \* \* \*

■ The allowable purposes for establishing a trusteeship include:

correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

29 U.S.C. 462. The list of proper purposes for imposing a trusteeship is "imprecise." *Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 316 (9th Cir.1978). The weight on the plaintiffs "is made heavy because an allowable purpose of the statute is the carrying out of the legitimate objects of a labor organization ... An object of questionable legitimacy therefore subjects the trusteeship itself to good faith doubt." *Ibid.*

■ As long as the trusteeship is supported by at least one proper purpose, it is immaterial that the labor union which imposed the trusteeship also may have had an impermissible motive. *See Int'l Bd. of Elec. Workers Local 1186 v. Eli*, 307 F.Supp. 495, 506 (D.Haw.1969) ("It is not necessary at this time for the court to engage in an exploration of the collective psyche of [the] International [union] in order to determine which motive holds greatest sway over it. If any one of the motives professed by International withstands the test of [29 U.S.C. § 462], it is now sufficient."); *Mason Tenders*, 884 F.Supp. at 837 ("One legally permissible purpose is all that is required for a valid trusteeship"); *Nat'l Ass'n of Letter Carri-*

ers v. Sombrotto, 449 F.2d 915, 923 (2d Cir.1971).

■ Accordingly, defendant SEIU is entitled to summary judgment as long as one of its rationales for imposing the trusteeship was proper, assuming plaintiffs cannot create a triable issue of fact as to the existence of that purpose. In other words, in order to survive summary judgment, plaintiffs must raise a dispute as to each purpose SEIU has put forward to justify the trusteeship.

### Defendant's Purported Rationales for Imposing the Trusteeship

Defendant SEIU claims it imposed the trusteeship for several legitimate purposes, including to effectuate the planned merger of Local 87 and to prevent Local 87's officers from thwarting the merger. SEIU also argues that Local 87 officers had taken various inappropriate actions that threatened the local's collective bargaining relationships and undermined its financial stability.

■ SEIU's primary rationale for imposing the trusteeship was to carry out the "legitimate objects" of the labor organization, including effectuating its merger. 29 U.S.C. 462. Imposing a trusteeship to effectuate a planned merger is valid under the LMRDA. *Local 796, Int'l Alliance of Theatrical Stage Employees v. Powell*, 124 L.R.R.M.2053, 2061, 1986 WL 15481 (N.D.Cal.1986); *Pile Drivers v. Northern Cal. Carpenters Reg'l Council*, 992 F.Supp. 1138, 1142 (N.D.Cal.1997). Therefore, defendant SEIU argues, preventing plaintiffs from derailing a lawful merger was a valid purpose of the trusteeship.

■ As noted above, plaintiffs must establish by clear and convincing evidence that the trusteeship was not for this valid purpose. Plaintiffs first debate the factual claim that they were trying to thwart the merger. Then they contend that even if Local 87's officers did try to block it, this

did not give rise to a valid purpose. Local 87 officers claim that they did not attempt to block the merger but instead attempted to negotiate its terms as demanded by their membership (Second Leung Decl. ¶¶ 4–6, 8). They claim that in both its polling of the membership and in its notice to the members dated January 28, 2002, of the membership meeting at which the merger was to be discussed and voted upon, Local 87's leadership maintained a neutral tone (First Leung Decl. Exh. 7; Miranda Decl. Exh. 1).

The undisputed evidence demonstrates, however, that plaintiffs were trying to thwart the merger. There is no evidence that the local was actually negotiating in good faith over the proposed terms of the merger. Instead it appears that the local officers attempted to undermine the process because they disagreed with its outcome.

For instance, defendant SEIU claims that Local 87 officers took actions that posed a threat to the union and justified the trusteeship. This would also meet the proper purpose to "correct financial malpractice" and to "assur[e] the performance of collective bargaining agreements or other duties of a bargaining representative." 29 U.S.C. 462. Specifically, defendant SEIU alleges Local 87 officers encouraged members to sign forms to revoke their authorizations to have their employers deduct their union dues from their paychecks (Second Leung Decl. ¶ 15). Plaintiffs maintain that the union members may not be compelled to execute dues check off authorizations as a condition of employment as long as they pay their union dues. *Gloria's Manor Home for Adults,* 225 N.L.R.B. 1133, 1144, 1976 WL 7350 (1976). While this may be true, it is irrelevant to SEIU's finding that the local officers jeopardized the union by encouraging such members to sign such forms.

Further, SEIU found that Local 87 officers were not negotiating in good faith about the merger. (Third Baird Decl. Exh. 2 at 9). Local 87 adopted a resolution on December 8, 2001, not to negotiate with SEIU over the terms of the merger, and plaintiffs have admitted that they were instructed by the membership not to negotiate with SEIU concerning the merger and to fight the merger (*Id.* at 6; First Leung Decl. ¶ 15). Further, the IEB hearing officer found that Local 87 officers were "committed to a course of reckless action to derail the merger including sacrificing the interests of the members to achieve their personal goal or remaining in control" (Third Baird Decl. Exh. 2 at 16).

Plaintiffs claim that the trusteeship was improperly imposed because the *members* of Local 87 voted to oppose the merger, spoke out against it, and attempted to negotiate better terms. The imposition of a trusteeship for the purpose of suppressing dissent and free speech rights of members violates Title I of the LMRDA and is improper under Title III of the LMRDA. *Thompson v. Office and Prof. Employees Int'l Union,* 74 F.3d 1492, 1506–07 (6th Cir.1996). Furthermore, plaintiffs point out that the members of Local 87 had the right to oppose the SEIU's plans and to instruct their leaders to seek better terms. In *United Brotherhood of Carpenters and Joiners v. Brown,* 343 F.2d 872, 882–83 (10th Cir.1965), the court held that a trusteeship was imposed because the local union "would not affiliate with the District Council and would not raise its dues." *Id.* at 883. The Tenth Circuit refused to uphold the trusteeship because to do so would place the court "in the position of allowing a national union to establish a trusteeship over a local union because the members of the local union insisted upon exercising a right guaranteed to them by statute." *Ibid.*[1] Both of these cases, how-

---

1. Further, *Brown's* holding that a trusteeship

may not be imposed solely to force through a

ever, deal with the speech of *members* acting as *members.*

Here the trusteeship was not imposed because of the *members'* speech in opposition to it-rather it was imposed because of Local 87 leadership's actions to thwart the merger that were jeopardizing the local and international unions. In order to state a free speech claim under the LMRDA, plaintiffs must establish that the union's action interfered with conduct that was, in fact, protected by the LMRDA. *United Steelworkers of America v. Sadlowski,* 457 U.S. 102, 111, 102 S.Ct. 2339, 72 L.Ed.2d 707 (1982). The question then is whether Local 87 officials were exercising a protected right when they tried to block the merger.

Article XIV, Section 3 of the SEIU constitution and bylaws provides that the SEIU Executive Board may "consolidate or merge existing Local Unions under such terms and conditions as the International Executive Board may determine when in the opinion of the International Executive Board the interests and welfare of the International Union and the membership thereof would be better served by such action" (Second Baird Decl. ¶ 2). Thus SEIU is authorized to consolidate existing local unions when it believes it is in the best interests of the union and its members to do so. Accordingly, Local 87 officials did not have any right to vote on or otherwise prevent the merger. Because SEIU's purpose was not infringing on any protected right, it was proper.

The Supreme Court has noted that the LMRDA was designed to protect union members in their capacity as members, not

union officers in their official capacity. *Finnegan v. Leu,* 456 U.S. 431, 436–37, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). A union officer, unlike other members of the union, wears a second hat—that of an agent of the union. "While he is not precluded from exercising his free speech rights as a member, he is also under a duty as a representative of the union's management to cooperate with it and implement its directives. He may not, while acting as the union's agent, sabotage or subvert its policies in the name of free speech." *Newman v. Local 1101, Communications Workers of America,* 570 F.2d 439, 445 (2d Cir.1978). Because this order finds that Local 87 leaders were attempting to block a lawful merger, their conduct was not protected.

In sum, plaintiffs have not proven by clear and convincing evidence that all reasons for the trusteeship were impermissible. Since this order finds that Local 87 officers' attempt to thwart the merger was sufficient to justify imposition and continuation of the trusteeship, this order need not discuss SEIU's additional rationales for the trusteeship. Accordingly, SEIU's motion for summary judgment is granted as to the trusteeship.

## CONCLUSION

Plaintiffs' claims for injunctive and declaratory relief relating to SEIU's decision to merge Local 87 into Local 1877 and SEIU's imposition of the trusteeship are **dismissed** with prejudice. SEIU's counterclaim for injunctive relief to enforce the trusteeship is **granted.** Plaintiffs are prohibited from taking any actions inconsis-

---

due increase that union members have rejected relied on the LMRDA's express guarantee of the right to vote on due increases to local union members. 29 U.S.C. 411(a)(3). The LMRDA does not, however, guarantee union members the right to vote on a merger. As such, even if plaintiffs could raise a triable

issue of fact as to whether SEIU imposed the trusteeship to silence the members through their officers, summary judgment still would be warranted. This is because the right to block a merger is not a protected right granted to members by the LMRDA. *Sadlowski,* 457 U.S. at 111, 102 S.Ct. 2339.

tent with the maintenance of the trusteeship. The only remaining issues in this case are SEIU's counterclaims for breach of fiduciary duty and conversion.

IT IS SO ORDERED.