**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 1186, Henry K. H. Lee, Charles L. Isaacs, Aaron E. C. Soong, Minoru Kouchi, and Akito Fujikawa, Plaintiffs,**

v.

**Walters K. ELI, W. L. Vinson and International Brotherhood of Electrical Workers, Defendants.**

Civ. No. 3052.

United States District Court
D. Hawaii.

Nov. 25, 1969.

Alvin T. Shim, Benjamin C. Sigal, of Shim, Sigal & Ono, Honolulu, Hawaii, for plaintiffs.

Vernon F. L. Char, of Damon, Shigekane & Char, Honolulu, Hawaii; Eugene Miller, of Brundage, Neyhart, Miller, Ross & Reich, Los Angeles, Cal., for defendants.

## DECISION ON MOTION FOR A PRELIMINARY INJUNCTION

PENCE, Chief Judge.

Local 1186 (Local) of the International Brotherhood of Electrical Workers (International) has brought this action for a preliminary injunction restraining the defendants from imposing a trusteeship upon Local, suspending its business manager, Akito Fujikawa, and interfering with the affairs of Local, which it was alleged had occurred on September 18, 1969. International Vice-President W. L. Vinson gave to the officers of Local and to Fujikawa, respectively, the following rationale for International's actions:

> "The reason for the international charge [i. e., trusteeship] has been violations of the collective bargaining agreement for electrical workers[1] and refusal to return men to jobs from which they were removed after being instructed to do so. Further, it was deemed necessary to take international charge because of pending litigation against IBEW Local 1186 and members thereof." (Vinson letter of September 30, 1969, to Officers of Local 1186, Exhibit B to defendants' Memorandum in Opposition to the Granting of Preliminary Injunction.)

> " * * * [Fujikawa is suspended from office] for promoting or directing violations of the collective bargaining agreement for electrical workers and refusal to return men to jobs from which they were removed after being instructed to do so. These acts which allegedly took place on or about September 11, 1969 relate to violations of Sections 11 and 13, Article XVII, IBEW Constitution." (Vinson letter of October 1, 1969, to A. Fujikawa,

Exhibit E to defendants' Memorandum in Opposition to Granting of Preliminary Injunction.)

The complaint alleges that the suspension of Fujikawa from office is in violation of Section 101(a) (4) of the Landrum-Griffin Act, 29 U.S.C. § 411(a) (4), and that the imposition of the trusteeship upon Local violates sections 302 and 304 of the same Act, 29 U.S.C. §§ 462 and 464.

### I.

In a prior proceeding this court denied plaintiffs' motion for a temporary restraining order as to the suspension of Fujikawa from office. The court held that the plaintiffs' causes of action concerning the suspension of Fujikawa and the imposition of the trusteeship upon Local were, for the purposes of determining the plaintiffs' right to interlocutory relief, separable. While these two causes of action raise common issues of fact, they raise different issues of law, based as they are upon different statutory provisions.[2]

The complaint alleges a violation of Fujikawa's rights in the following terms:

> "7. Plaintiffs are informed and believe, and therefore aver that defendants placed Local 1186 under supervision and suspended Fujikawa, because said plaintiffs were named defendants in an action before this Court entitled Halfhill Electrical Co., Ltd. v. IBEW Local No. 1186, et al., Civil No. 3049 and were actively prosecuting their defense contrary to the wishes and instructions of the defendants * * * [in] violation of § 101(a) (4) * * * of the Act. * * * "

The *Halfhill* case charges Local, the Pacific Electrical Contractors Association,[3]

---

1. Collective Bargaining Agreement between Pacific Electrical Contractors Association and Local 1186 of the IBEW, Exhibit F to defendants' Memorandum in Opposition to the Granting of Preliminary Injunction.

2. Sheridan v. United Brotherhood of Carpenters, etc., 3 Cir., 1961, 306 F.2d 152.

3. The Pacific Electrical Contractors Association, of which Halfhill is a member, is the major employer group in the electrical contracting industry in Hawaii, and is, as noted above, a party to a collective bargaining agreement with Local.

Fujikawa, and other individuals with a conspiracy to restrain competition in the electrical contracting industry in Hawaii by means of rigging bids, illegally controlling the supply of "material, equipment, and apparatus", and manipulating the labor supply so as to reward those who cooperate with conspiracy and to punish those who oppose it. Of particular interest here is the last of the means by which the alleged conspiracy is furthered. Halfhill alleges that Local and Fujikawa are attempting to "drive Halfhill out of business" by cutting off his labor supply, and that between August 15, 1969 and September 15, 1969 over twenty Halfhill employees quit

> "because they were engaged in a conspiracy in restraint of trade * * * and said employee-defendants did not quit of their own free will, but quit because they were instructed to do so by Defendant Fujikawa." Complaint, para. 8.)

It is clear that, if these allegations were true, they would support the charges brought by international against Fujikawa, for the work stoppages alleged in the *Halfhill* complaint constitute a violation of Article IV of the IBEW–PECA collective bargaining agreement,[4] and Article XVII of the International Constitution.[5]

 Plaintiffs here contend that the suspension of Fujikawa is in violation of § 101(a) (4) of the Landrum-Griffin Act, *supra*, which provides as follows:

> "(4) Protection of the right to sue. —No labor organization shall limit the right of any member thereof to

institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator * * *."

Assuming the truth of plaintiffs' factual allegations that Fujikawa was suspended because he was named a defendant in the *Halfhill* case and was actively prosecuting his defense contrary to the wishes and instructions of International, nevertheless this court is not satisfied that, as a matter of law, the plaintiffs have made a prima facie showing that § 101(a) (4) has been violated. This statute is designed to protect the right of union members *to sue*, regardless of whether or not such a suit is adverse to the interests of the union.

 It is clear that the statute protects the *union member* against reprisals as well as against more formal limits upon his right to sue. N.L.R.B. v. Industrial Union of Marine and Shipbuilding Workers of America, etc., 1968, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706; Operating Engineers Local Union No. 3 v. Burroughs, 9 Cir., 1969, 417 F.2d 370. But plaintiffs here have not referred this court to any authority, nor have they made any substantial attempt to argue that Congress ever intended § 101(a) (4) to apply where, as here, a union member is sued by an employer.

---

4. Note 1, *supra*, Article IV, Section 1.

5. IBEW Constitution, Article XVII states in pertinent part:
 "Sec. 11. All L.U.'s [Local Unions] shall be compelled to live up to all approved agreements unless broken or terminated by the other party or parties, which fact shall first be ascertained by the I.P. [International President]. No agreement of any kind or nature shall be abrogated without sanction of the I.P."

"Sec. 13. No L.U. shall cause or allow a stoppage of work in any controversy of a general nature before obtaining consent of the I.P. The I.P., or his representative, has the power at at any time to enter any situation or controversy involving a L.U. or any of its members, and the decision of the I.P., direct or through his representative, shall be accepted by the L.U. and its officers, subject to appeal to the I.E.C. [International Executive Council] and I.C. [International Convention]."

It is not necessary for this court to rule upon that issue for the court remains unconvinced that the relief plaintiff Fujikawa seeks—restoration to his former status as union officer—may properly be granted under the Landrum-Griffin Act. In construing § 101 (a) (5) of the Act, a companion section in "the union member's Bill of Rights", the Ninth Circuit Court of Appeals has held that, while this section abrogated the power of an International to impair the rights of union *membership,* it did not limit the power of an International to suspend or remove a member from union *office.* Grand Lodge of the International Association of Machinists v. King, 9 Cir., 1961, 335 F.2d 340. The Third Circuit has also held that " 'Title 1, Section 101(a) (5) secures safeguards *against improper disciplinary action against union members, as members, but not as officers or employees of the union.'* (Emphasis supplied.)" *Sheridan, supra* n. 2, 306 F.2d at 166. It is manifest that here Fujikawa was removed as an officer for his acts as such.

The requested preliminary injunction restraining the suspension of Fujikawa, as business manager of Local, is DENIED.

## II.

Anent plaintiffs' motion for a preliminary injunction against the trusteeship, as noted earlier, plaintiffs claim that the imposition of the trusteeship violates §§ 302 and 304(c) of the Landrum-Griffin Act (29 U.S.C. §§ 462 and 464(c)).

Section 464(c) states:

"Presumptions of validity or invalidity of trusteeship

(c) In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title. After the expiration of eighteen months the trusteeship shall be presumed invalid in any such proceeding and its discontinuance shall be decreed unless the labor organization shall show by clear and convincing proof that the continuation of the trusteeship is necessary for a purpose allowable under section 462 of this title. In the latter event the court may dismiss the complaint or retain jurisdiction of the cause on such conditions and for such period as it deems appropriate."

The complaint contains the following allegation:

"5. On September 18, 1969, Vinson sent a telegram to Fujikawa * * * advising Fujikawa that Eli had been authorized and directed to take supervision over the affairs of Local 1186 * * * immediately. Said * * * [action was] taken by the IBEW without giving the plaintiffs a fair hearing, and no such hearing is contemplated."

While § 304(c) of the Act is not mentioned here, the plaintiffs make clear in argument to the court their contention that § 304(c) forbids the imposition of a trusteeship *prior* to the granting of a fair hearing. The statute however, states that a permissible trusteeship may be *"ratified after* a fair hearing." (Emphasis added.)

This court could dispose of the plaintiffs' case on that sole basis, but there is yet another reason why the plaintiffs' contention cannot be sustained. Plaintiffs insist that § 304(c) imposes certain affirmative restrictions on the power to impose trusteeships, viz., all trusteeships must be established in conformity with the union's laws, must be authorized or

ratified after a fair hearing, etc. Failure to comply with these provisions, plaintiffs contend, invalidates the trusteeship.

■ Failure to comply with the provisions of the section does not result in invalidity *per se*. Noncompliance does at most but dis-entitle the trusteeship to the *presumption* of validity which the section would otherwise confer upon it. To hold otherwise would make all of the rest of the language in this statute either misplaced—since the presumption would then only apply to the provisions of § 302—or completely redundant. If Congress had wished to make compliance with the provisions of § 304(c) a pre-essential to validity, it could easily have said so. As the words of § 304(c) make clear and manifest, Congress, however, declined to do so, and took care to create only a presumption.

■ Plaintiffs, in oral argument but not in their complaint also contend that § 304(c) invalidates any trusteeship imposed by a union whose constitution does not contain the following provisions: (1) the rules of procedure by which a trusteeship is to be imposed; (2) a guarantee of the Local's right to a fair hearing; and (3) the rules governing such a hearing. These contentions are founded upon the same misconception as to the intent and effect of § 304(c) and are dismissed for the same reason. Failure to have such specific, detailed, procedure set out in its constitution does not result in complete restraint of intervention and takeover by the International. *Cf.* Parks v. I.B.E.W., 4 Cir., 1963, 314 F.2d 886, 907. The *presumption* of validity may be lost, but if the procedure set up by the union is found to be a just and reasonable one, and preserves the Local's right to due process, it is valid.

■ The procedure set up by the International, empowering the president:

"To take charge of the affairs of any L.U. when in his judgment such is necessary to protect or advance the interests of its members and the I.B.E.W., but for a period not to exceed six months. If the I.P. or his representative cannot or has not adjusted the affairs of the L.U. involved at the end of this period, then he shall refer the entire case to the I.E.C. which shall render a decision at its next regular meeting." (Constitution, Article IV, Section 3 (9));

together with the Statement of IBEW Policy on International Charge of Local Union Affairs of December 1, 1964,[6] providing for notice of hearing, statement of purpose, hearing procedure, presentation of evidence before an authorized hearing officer, recordation of evidence, etc., complies with the requirements of due process.

Plaintiff's next group of contentions, as noted above, are based upon § 302 of the Act:

*"Purposes for establishment of trusteeship*

Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."

A. *Alleged violation of the IBEW Constitution.*

■ The first contention is that International did not impose the trusteeship in conformity with its own Constitution:

"9. Defendants by imposing a trusteeship or supervision over Local 1186 violated § 302 of the Act by assuming

6. Defendants' Ex. 2.

trusteeship or supervision over Local 1186 as a subordinate body not in accordance with the constitution and by-laws of the IBEW as required under said section. Section 3 of Article IV * * * and section 7 of Article IX * * * provide that only the International Executive Council or the International President of the IBEW may take charge of the affairs of any local union or may suspend any local officer or member. There is no provision for a vice president or international representative to take charge of the affairs of any local union or to suspend any local officer." (Complaint.)

This contention, however, bypasses the fact that the International's constitution allows the International President to "delegate the powers of his office to an International Representative, Vice President, or Assistant." (International Constitution, Article IV, Section 4.) Such delegation did in fact occur in this case.[7]

**B.** *Alleged deficiencies in the International Constitution.*

Plaintiffs next contend that § 302 invalidates the imposition of a trusteeship where the union constitution or by-laws do not set forth the procedures by which and the purposes for which the International may impose a trusteeship. This, too, was not alleged in the complaint but, in the interest of expediency will, albeit reluctantly, be passed upon by this court. Plaintiffs cite United Brotherhood of Carpenters and Joiners of America v. Brown, 10 Cir., 1965, 343 F. 2d 872, in support of their position. There the trusteeship was held invalid for two reasons: first, the union constitution did not *authorize* the imposition of trusteeships; and second, the trusteeship was not imposed for a reason permitted by § 302. The case contains the following dictum:

" * * * [Section 302] requires at the very least that the organization's constitution and bylaws set forth the circumstances under which a trusteeship may be established over its local unions and the manner or procedure in which it is to be imposed." 343 F. 2d at 882.

This statute has not been construed in the Ninth Circuit to require these details in union constitutions and bylaws. In Flight Engineers International Association, etc. v. Continental Airlines, Inc., 9 Cir., 1961, 297 F.2d 397, where the union constitution and bylaws contained *no* provision relating to trusteeships, the Ninth Circuit held that § 302 invalidated the International's "inherent power" to impose a trusteeship, with the possible exception of the situation where such inherent power is exercised "for the purpose of preventing the subordinate body from violating some obligation it had accepted by virtue of its relationship with the international." 297 F.2d at 402. The fact that the Ninth Circuit leaves open the possibility that the "inherent power" to impose a trusteeship may still exist under *some* circumstances, no matter how narrowly circumscribed those circumstances might be, is incompatible with plaintiffs' contention that § 302 requires union constitutions and bylaws to set out the procedures and circumstances under which a trusteeship is to be imposed.

 In the instant case, unlike the *Flight Engineers* or *Brown* cases, *supra,* it is clear that the union constitution empowers the International to impose a trusteeship. Article IV, section 9 of the Constitution grants such power to the International President, and Article IX, section 7 grants such power to the International Executive Council. Therefore, the standards set forth in *Flight Engineers* have more than been met by the International's Constitution. The court recognizes that the International Constitution does not set forth with particularity the circumstances in which a trustee-

7. Letter of International President Pillard to International Vice President Vinson, Exhibit A to the defendants' Memorandum in Opposition to the Granting of a Preliminary Injunction.

ship may be imposed. The International President is authorized to impose a trusteeship whenever "in his judgment such is necessary to protect or advance the interests of [the members of Local] and the IBEW." Article IV, section 3(9). Moreover, the International Constitution is silent as to the procedure by which the trusteeship is to be imposed. However, this court cannot and does not construe § 302 as requiring more detail in the International Constitution than was required in *Flight Engineers*. Moreover, even if the International Constitution were found to be deficient under § 302 by virtue of its failure to specify the circumstances in which, and the procedures by which, a trusteeship may be imposed, no interlocutory relief would be forthcoming. Any such omission from the International Constitution would not appear to cause the plaintiffs immediate injury of a substantial, much less irreparable nature.

The Local is protected from abusive treatment by § 302, which declares that trusteeships may be imposed only

"for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization",

as well as by its right to procedural due process, including a hearing. The alleged silence of the International Constitution as to these statutory rights does not in the slightest curtail them and they are sufficient to protect the plaintiffs against immediate and irreparable injury.

### C. Alleged Improper Purposes Under § 302.

Plaintiffs next contend that the trusteeship was not imposed for any of the reasons permitted by § 302. As noted at the outset of this decision, the International Vice President has officially declared that the International imposed the trusteeship for three reasons: violations of a collective bargaining agreement, refusal to return men to jobs from which they were removed after being instructed to do so, and "pending litigation."[8] (Vinson letter of September 30, *supra*.) It is clear these charges allege a violation of the International Constitution (Article XVII, Sec. 13) as well as the collective bargaining agreement (*supra* n. 1, Article IV).

As noted earlier, with reference to the suspension of Fujikawa as business manager, the complaint asserts that the trusteeship was imposed

"because said plaintiffs were named as defendants in an action before this Court entitled Halfhill Electrical Co., Ltd. v. IBEW Local 1186, et al., Civil No. 3049 and were actively prosecuting their defense contrary to the wishes and instructions of the defendants."

This loose allegation does not attribute any *purpose*, licit or illicit, to the defendants. In a prior paragraph of the complaint, plaintiffs also set forth:

"During the week of September 15, 1969, various legal actions were filed against Local 1186 and various officers and members of Local 1186. * * * The defendants by their acts have shown that they are hostile to the interests of Local 1186 and will support the opposing parties in such actions."

This allegation, like the preceding, does not really attribute a purpose to the defendants so much as an attitude. That, too, is insufficient. As discussed earlier, many of the charges which Halfhill is bringing against Local and Fujikawa are the same charges being brought against them by the International. During argument, plaintiffs' counsel stated:

"Our position finally is that in fact the reason, the motivating cause for the institution of the trusteeship against the Local was the filing of the Halfhill suit in this Court." (TR 14.)

8. Among these legal actions, of course, is the *Halfhill* suit.

■ Nowhere, however, do plaintiffs explain what the impelling causal relationship between the *Halfhill* suit and the imposition of the trusteeship is; they rest on the mere assertion that it exists. Plaintiffs' position seems to be that the imposition of the trusteeship was illegal if it was *in any way* actuated by the *Halfhill* suit. Once this is determined, plaintiffs would contend, § 302 does not distinguish between situations in which the International acts out of: (1) caprice; (2) hostility—a desire to have the Local *lose* the *Halfhill* case; (3) a desire to assume the defense of the *Halfhill* suit itself, rather than entrust the defense of this litigation to the Local; or (4) a reasonable belief that the allegations made by Halfhill were true and that the International should intervene in order to prevent the continuation of the alleged misconduct. It is clear that the first and second reasons are not permitted by § 302. Whether the third or fourth reasons are permitted is discussed hereafter.

■ A point of procedure must be taken up first. At the hearing on this motion, plaintiffs made the following offer of proof:

"Our proof would be directed to the point that first there was no valid basis, no reasonable basis for saying that there was a violation of the collective bargaining agreement; that the International simply does not have before it—and in fact there is no factual support—does not have anything for the allegation that the Local violated the collective bargaining agreement." (TR 11.)

"My evidence would be the testimony of Mr. Fujikawa, the business manager, and the testimony of two other officers of the Local Union, who would testify to the fact that the Local never received any instructions, were wholly unaware of any instructions, if any instructions have in fact been given. * * * So that in fact the Local did not refuse to comply with any direction of the president. (TR 12.)

"* * * we would put on Mr. Fujikawa and other officers as well as a fourth witness to point out that there was no violation of the collective bargaining agreement and there were no violations of any other aspect of the constitutional duties." (TR 14.)

"* * * there was no mass walkout [on Halfhill]." (TR 38.)

In summary, plaintiffs offered to prove by negation that the only reason for the imposition of the trusteeship was the *Halfhill* suit. The court denied plaintiffs the opportunity to put on oral testimony at this stage because:

"A requirement of oral testimony would in effect require a full hearing on the merits and would thus defeat one of the purposes of a preliminary injunction which is to give speedy relief from irreparable injury." Ross-Whitney Corp. v. Smith Kline and French Laboratories, 9 Cir., 1953, 207 F.2d 190, 198.

In *Ross-Whitney* the Ninth Circuit upheld the granting of a preliminary injunction over the protest of the defendants that a preliminary injunction cannot be based on affidavits rather than oral testimony. It is similarly within the sound discretion of the court to deny plaintiffs the opportunity to put on oral testimony at this preliminary stage. Plaintiffs' offer of proof, taken together with the affidavits of International Vice President Vinson, International Representative Eli, Fujikawa, and the transcript of an intra-union hearing which cover the factual issues, are sufficient to permit this court to decide if a preliminary injunction should issue.

The intra-union hearing just referred to was held on October 13, 1969 "to permit the presentation of evidence as to why the International charge [i.e., trusteeship] should not be continued." (Vinson letter of September 30, *supra*.) International Vice President Vinson presided. International Representative Eli represented the International in urging the continuation of the trusteeship. Fujikawa and Reynolds Jerome

(another member of Local) represented the Local in urging the discontinuance of the trusteeship.

Through the testimony of International Representatives Eli and Hughes, the International produced evidence tending to prove that agents of Local were responsible for unauthorized work stoppages against Halfhill and failed to countermand such work stoppages when ordered to do so by the International.

As noted before, it is clear that such work stoppages, if they occurred, would constitute violations of the PECA-IBEW collective bargaining agreement and the IBEW constitution. It is equally clear that § 302 of the Landrum-Griffin Act does not prevent an International from imposing a trusteeship upon a Local in order to stop such practices—whether or not such practices are the subject of a separate civil action brought by Halfhill himself. And yet, in the entire course of this intra-union hearing, neither Fujikawa nor Jerome, speaking for Local, denied the basic correctness of the International's testimony,[9] nor did Local present any evidence whatsoever in rebuttal.

■ This court is unable to find that plaintiffs have made a prima facie case that the trusteeship was imposed merely because Local was sued by Halfhill.

■ Plaintiffs next contend that, even if the International had more than one motive for imposing the trusteeship, the *dominant* motive remains the fact that Local was sued by Halfhill. Because this allegedly dominant motive is an improper one, they conclude, the trusteeship was imposed invalidly. In Parks v. I.B.E.W., *supra*, the Local argued similarly that the International President had "mixed motives" for imposing the

trusteeship. The argument was rejected in *Parks*. It must also be rejected here, in this preliminary stage. It is not necessary at this time for the court to engage in an exploration of the collective psyche of International in order to determine which motive holds greatest sway over it. If any *one* of the motives professed by International withstands the test of § 302, it is now sufficient.

■ Plaintiffs' next contention is "that there is no justification for the imposition of the trusteeship, for depriving the Local of its autonomy, inasmuch as all that International was interested in is the removal of Fujikawa." (TR Oct. 29, 1969, at 44.) This argument is rejected on the same basis as the preceding one.

■ Even if this court were satisfied that International had no reasonable basis for believing that Local was involved in any misconduct whatsoever, the court would not be disposed to grant interlocutory relief under the particular circumstances of this case. The International would have a legally valid basis for imposing the trusteeship even if that were done for the sole purpose of assuming the defense of the Halfhill litigation. The Local stands accused of active participation in an elaborate conspiracy to restrain competition in the electrical contracting industry in Hawaii. Halfhill asks for $20 million in damages.

Section 302 of the Landrum-Griffin Act allows International to impose trusteeships "for the purpose * * * of otherwise carrying out the legitimate objects of such labor organization." The assumption of the defense against Halfhill is obviously a "legitimate object." While the case law dealing with permissible purposes under § 302 does not specifically answer the question presented in this case,[10] the ultimate an-

---

9. Local's representatives made many technical objections, usually on the grounds of relevance, but only one as to the accuracy of International's evidence. This latter objection was obscurely worded and of little consequence. (TR 72.)

10. *Cf.* United Brotherhood of Carpenters and Joiners of America v. Brown, *supra*; Parks v. I.B.E.W., *supra*; Schonfeld v. Raftery, 271 F.Supp. 128 (S.D.N.Y. 1967); Brotherhood of Painters, Decorators and Paperhangers of America v.

swer must depend on factual considerations developed at the hearing on a permanent injunction. Meanwhile, this court declines to substitute its judgment over International's own officers as to whether this particular objective of International was "legitimate."

Plaintiffs' last group of contentions concerns procedural fairness. On a plethora of grounds plaintiffs contend in essence that the trusteeship should be enjoined because, allegedly, International hasn't given Local a fair hearing on the propriety of the trusteeship. The court recognizes that Local is entitled to a fair hearing on the trusteeship. For the purposes of disposing of this motion, the court assumes, without deciding, that, as plaintiffs contend, this right is conferred by the Landrum-Griffin Act rather than by prior law.

As mentioned above, an intra-union hearing was held on October 13, 1969, "to permit the presentation of evidence as to why the international charge should not be continued." At the time of this hearing, an International "Statement of Policy" concerning the conduct of hearings of this kind was in effect.[11] This statement was issued on December 1, 1964, by the then International President. This document provides, in pertinent part:

> "The Landrum-Griffin Act provides for a 'fair hearing' on International Charge [trusteeship] of the affairs of a Local Union. Such hearing must be conducted prior to making the International Charge effective, except when the situation is of such seriousness that delay cannot be permitted. In that case, the hearing is to be held within fifteen (15) days after the effective date of the International Charge. This should be held to a minimum as it tends to put the 'presumed' validity of the 'trusteeship' in

jeopardy under Landrum-Griffin. The findings of the hearing officer are to be transmitted to the I.P. promptly."[12]

> "The essentials of a 'fair hearing' must be observed, which includes (sic):
> A. Right to adequate notice of allegations and of hearing.
> B. Right to be heard in own defense.
> C. Right to confront and cross examine witnesses.
> D. Right to produce evidence through witnesses."[13]

Plaintiffs do not contend that Local was denied any of these four rights. The transcript of the October 13 hearing indicates, moreover, that Local was accorded other rights, among them the right to have a complete transcript of the proceedings and the right to be represented by any International member as counsel. Plaintiffs' position is that the grant of these rights was not sufficient to guarantee Local a fair hearing, and that the hearing which was held was not fair in fact.

*A. The Failure of the International to Hold the Hearing Prior to the Imposition of the Trusteeship.*

The first contention is that International has failed to prove that "the situation is of such seriousness", within the meaning of the Statement of Policy, that International was justified in imposing the trusteeship before holding the hearing. In making this contention, the plaintiffs appear to assume that the burden is on International to demonstrate the requisite "seriousness." The Statement of Policy, however, does not provide standards by which "serious-

---

Brotherhood of Painters, Decorators and Paperhangers, etc., Local Union 127, 264 F.Supp. 301 (N.D.Cal.1966); Jolly v. Gorman, 304 F.Supp. 15 (S.D.Miss. 1969); Plentty v. Laborers' International Union, 302 F.Supp. 332 (E.D.Pa.1969).

11. Defendants' Ex. 2.

12. Defendants' Ex. 2, p. 2.

13. Defendants' Ex. 2, p. 4.

ness" is to be determined; rather, by its silence this document leaves this determination within the sound discretion of the one imposing the trusteeship. Thus, the burden is upon the plaintiffs to show that this discretion has been abused.

### B. Delay in Holding the Hearing.

Plaintiffs' second contention is that the hearing was held twenty-five days after the imposition of the trusteeship, whereas the Statement of Policy requires that the hearing be held within fifteen days. The trusteeship was formally imposed on September 18, 1969, and the hearing was held on October 13, 1969; thus the hearing was, by plaintiffs' calculations, ten days late. This delay, they contend, rendered the hearing unfair.

Although Local was officially notified of the trusteeship on September 18, 1969, the establishment of the trusteeship was barred on September 20, 1969, by a Temporary Restraining Order secured by Local, which was not dissolved until September 26. The Statement of Policy declares that the fifteen-day period runs from the date upon which the trusteeship became "effective"; the trusteeship did not become "effective" until September 26, when the Temporary Restraining Order was dissolved.

Notice of the hearing was sent to Local by International Vice President Vinson on September 30. The plaintiffs did not, so far as the record discloses, raise their objection to the tardiness of the hearing until the very day of the hearing. Plaintiffs' objection was not timely, and must be deemed waived.

However, even if plaintiffs' contention were held to have been timely raised, it would not, of itself, raise even a presumption of unfairness. Plaintiffs have made no showing that this delay made the hearing any less fair than an earlier hearing might have been.

### C. Subject of the Hearing: Establishment or Continuation of the Trusteeship.

Plaintiffs next protest the fact that the hearing was held to determine whether or not the trusteeship should *continue;* they contend that the topic of the hearing should have been whether or not the trusteeship was validly *established.* Plaintiffs first seek to support this contention on the basis of § 304; this section, however, requires only a fair hearing on the validity of the trusteeship. It lends no support to the thin distinction the plaintiffs urge here. Moreover, as fully discussed earlier in this decision, failure to comply with the provisions of § 304 deprives the non-complying trusteeship of a presumption of validity, not of legality itself.

Plaintiffs then seek support for their contention in the Union Statement of Policy, but far from requiring that the hearing be held on the question of the establishment of the trusteeship, that document clearly includes a hearing on continuation.

"The statement of purpose in * * * [the notice of the hearing] shall include warning of the impending International Charge of the affairs of the L.U. (or *continuation,* if International Charge has been assumed prior to a hearing on the matter); a brief statement of the reasons therefor; and that the hearing is to permit the presentation of evidence as to *why such course should not be followed.*" (Emphasis added.) [14]

Even if the lack of support in § 304 of the Act and the Statement of Policy were not, by themselves, fatal to the plaintiffs' claim, the claim fails for two other reasons. Plaintiffs have not made any attempt to show that evidence presentable on the subject of establishment would have been substantially different from evidence actually presented on the subject of continuation. The transcript of the hearing indicates that the hearing officer at no time indicated

---

14. Defendants' Ex. 2, p. 2.

that evidence would be excluded because it related to the establishment of the trusteeship rather than the continuation of it; on the contrary, the hearing officer received extensive evidence on events which took place prior to the imposition of the trusteeship. The hearing officer viewed the subject of continuation as encompassing establishment. Plaintiffs were not deprived of a fair opportunity to present evidence.

Secondly, plaintiffs' contention was not timely. It was first made, rather obliquely, by Fujikawa at the hearing itself, when he asserted that the hearing was not being held "for the purpose of determining whether or not the trusteeship should be *ratified,* as the law requires." (TR 11.) (Emphasis added.) The contention did not emerge in its present form until November 5—*after* the intra-union hearing and *after* a hearing in this court. Plaintiffs, having failed to give the defendants a reasonable opportunity to remedy the alleged defect, are not entitled to immediate equitable relief on this ground.

### D. Vagueness of the Charges.

Plaintiffs also object to the alleged vagueness of the charges brought by International against Local. As a practical matter it is difficult to believe that Local knew so little about the charges that its ability to make a defense at the intra-union hearing was impaired, especially since Local concededly knew that these charges were at least partly related to the charges made against Local in the *Halfhill* case.

Even if the court were to assume that the charges were unreasonably vague, Local had every opportunity to make a timely request to International for a clarification of the charges but not only made no such a request, but did not even raise the issue of vagueness until it came into this court on October 29, 1969, some two weeks after the intra-un-

ion hearing. Such dilatory action entitles Local to no equitable relief.

### E. Bias of the Hearing Officer.

Plaintiffs next object to the fact that International Vice President acted both as prosecutor (trustee) and judge (hearing officer) of Local. Plaintiffs argue that, since Vinson is largely responsible for the establishment of the trusteeship, he has a "direct personal interest"[15] in upholding the validity of the trusteeship and is thus incapable of giving the Local a fair hearing. That argument was made against the I.B.E.W. and rejected in Parks v. I.B.E.W., *supra.*

> "Separation of functions is not an absolute due process prerequisite to fairness in administrative proceedings, [citation omitted]; in internal union proceedings it traditionally, and under the * * * [Landrum-Griffin Act], has also not been deemed a requirement of fairness. Courts, federal courts especially, are justified in ruling a union tribunal biased only upon a demonstration that it has been substantially actuated by improper motives—in other words, only upon a showing of specific prejudice." 314 F.2d at 913.

Such a showing of specific prejudice has not been made in this case. Moreover, while Mr. Vinson may be fully responsible for the existence of the trusteeship, his powers as "judge" are far from absolute. By virtue of his role as hearing officer presiding at the October 13 hearing, Mr. Vinson is empowered to make findings; but, as concerns the ultimate decision to end the trusteeship or not, Mr. Vinson is empowered only to make recommendations. Final authority belongs to the International President. If the trusteeship continues for more than six months, this authority then vests in the International Executive Council.[16]

15. Id. at 16.

16. International Constitution, Article IV, Section 3(10).

**510**

The court is left to infer bias merely from the combination of Mr. Vinson's roles, an inference which this court cannot make.

*F. Right to Counsel.*

 Plaintiffs next protest the fact that the Local was not allowed to have counsel present at the October 13 hearing, thus depriving Local of a fair hearing. They cite no authority *for* this proposition, for the existing authority is *against*. See, e. g., Jolly v. Gorman, *supra* n. 10, and cases cited therein. Moreover, in reading the hearing transcript, the court finds nothing to indicate that the ability of either party to make its case was significantly impaired by the absence of counsel. The subject matter of the dispute and the rules by which it was to be decided appear to have been adequately comprehended by all.

*G. Post-hearing Procedure.*

Finally, plaintiffs make two contentions based on the fact that International President's final decision on the continuation of the trusteeship has yet to be made. The first of these contentions is that the hearing itself is thus rendered *incomplete*, and that this incompleteness renders the trusteeship invalid under § 304. The incorrectness of this interpretation of § 304 has been discussed above.

Secondly, Local asserts that it has the right to appeal from the findings and recommendations of the hearing officer. If Local has any such right, the issue is not yet ripe for determination by this court, since the International has not yet denied plaintiffs the opportunity they demand.[17]

For the moment, it is sufficient to note that Local has had its intra-union "day in court", and that "day" has not been shown to have been unfair. The hearing granted to Local 1186 was equally as fair as intra-union hearings found to have been fair in other jurisdictions. See, *e. g.*, Schonfeld v. Raftery, *supra* n. 10, aff'd 2 Cir., 381 F.2d 446; Jolly v. Gorman, *supra* n. 10.

Plaintiffs' motion for a preliminary injunction against the imposition and continuation of the trusteeship by International is denied.

17. Article XVII, Section 13, of the IBEW Constitution, (n. 5 *supra*) permits the Local Union to appeal from the intervention of the International President in certain circumstances. The court expresses no view as to whether such an appeal is available in the circumstances of this case.