**J.W. PRUITT, Jr., Plaintiff,**

**v.**

**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA; Edward L. McGuffee; and Carpenters' Local Union No. 225, United Brotherhood of Carpenters and Joiners of America, Defendants.**

**Civ. A. No. C85–3036A.**

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 9, 1987.

Frank E. Specht, McKenzie & Specht, Duluth, Ga., for plaintiff.

Edward J. Gorman, III, United Bro. of Carpenters & Joiners of America, Washington, D.C., James T. Langford, Atlanta, Ga., for defendants.

## ORDER

SHOOB, District Judge.

Several motions are pending in this case. Plaintiff seeks reconsideration of the Court's order dated May 13, 1987, 659 F.Supp. 1511. Defendants oppose plaintiff's motion and request that several statements in plaintiff's Response in Opposition to Defendants' Renewed Motion for Summary Judgment ("Plaintiff's Response") be stricken as violative of a protective order entered by Judge Tidwell in a related case dated January 21, 1987. Defendants have also filed a renewed motion for summary judgment. Plaintiff's motion for reconsideration is denied. Defendants' motion for summary judgment will be granted in part and denied in part. Consideration of defendants' motion to strike will be deferred until after Judge Tidwell has ruled on plaintiff's motion to modify the protective order.

### Background

Because the facts are fully explained in the Court's order dated May 13, 1987 a brief overview will suffice here. Plaintiff J.W. Pruitt, Jr. ("Pruitt") has brought this action against his local and national union and the trustee imposed upon the local for denying him an elected position within his local union. Pruitt was elected to office in his local union in June 1982. According to union bylaws, however, union membership was too low for Pruitt to take office at that time and remained too low at least until December 1984.[1] In September 1983

---

1. The relevant bylaw provides as follows:
   Section 25. (A) BUSINESS REPRESENTATIVES.
   The Local Union shall elect three (3) Business Representatives whose salary and expense will be the responsibility of the Local Union.

They shall be governed by the following formula:
   1,500 members paying dues according to the Negotiated Agreement—three (3) Business Representatives

Pruitt's local, number 225, voted to sue the District Council for alleged mishandling of the area-wide collective bargaining agreement and set aside $50,000 for the suit, granting Pruitt and two other members authority to bring the suit. On August 2, 1984, the national union imposed a trusteeship on the local union, naming defendant Edward McGuffee ("McGuffee") as trustee. Among the numerous tasks attempted or accomplished by McGuffee were the merger of most of the area locals into one and the dissolution of the District Council.[2] The final relevant incident is Pruitt's notification (allegedly in December 1984) that he would not be permitted to take office.[3]

Pruitt asserts that his job denial violates Title I and Title III of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 401 et seq.[4] He claims that the trusteeship imposed upon the local union was maintained for the unlawful purpose of denying him his job in violation of 29 U.S.C. § 462 and that the reason for his job denial was the exercise of his protected rights of freedom of speech and assembly and right to sue under 29 U.S.C. § 411.

*Prior Order & Remaining Issues*

In its order of May 12, 1987 the Court granted in part and denied in part defendants' motion for summary judgment with leave to renew. The Court barred plaintiff's claim that the trusteeship was imposed for the illegal purpose of quashing the lawsuit against the District Council after applying the six-month statute of limitations from the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b).[5] (Order, p. 15.)

Further, the Court found that plaintiff's claim that the trusteeship was established for an illegal purpose could not meet the clear and convincing evidence standard that was applied (order, pp. 16–17). Therefore, the only remaining issue under Title III is whether plaintiff's claim that the trusteeship was *maintained* for the illegal purpose of denying plaintiff his job poses any genuine issues of material fact in light of the clear and convincing evidence standard which would be applied at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

With regard to plaintiff's Title I claim, the Court concluded that plaintiff must prove that claim by clear and convincing

---

If the membership falls below 1,500 members paying dues according to the Negotiated Agreement, three consecutive months, the Business Representative receiving the lowest number of votes in the election in which he or she was elected, will be removed from office. If the membership falls below 1,000 members paying dues according to the Negotiated Agreement, the member receiving the next lowest number of votes in the election in which he or she was elected, will be removed from office.... When and if the membership increases or declines, each Business Representative removed or employed will be based on the past three (3) months membership of the 8th day of each month's report submitted to the International United Brotherhood of America.... A Business Representative may be removed as prescribed by the Constitution and Laws of the United Brotherhood.

2. It is unclear whether Pruitt's alleged entitlement to his elected position was a result of the newly merged locals or a genuine rise in membership due to McGuffee's membership campaign. Therefore, there still remains a question of whether Pruitt was *ever* entitled to take office. His entitlement will be assumed for consideration of these motions.

3. It remains unclear when Pruitt actually learned that he would not be allowed to take office. *See* footnote 5, *infra*.

4. Plaintiff's Title I claims arise under 29 U.S.C. § 411(a)(2), which guarantees the right "to meet and assemble freely with other [union] members," and 29 U.S.C. § 411(a)(4), which protects the rights of union members to bring suit against the union or its officers. His Title III claim arises under 29 U.S.C. § 462, which describes the purposes for establishing and maintaining a trusteeship, and 29 U.S.C. § 464(c), which discusses the presumption of validation of a properly imposed trusteeship.

5. The same statute of limitations will be applied to plaintiff's claim of illegal maintenance to keep him from his job, but insufficient facts were presented in either defendants' renewed motion for summary judgment or plaintiff's response to determine the issue of whether plaintiff's claim was timely. Because there is no evidence showing that plaintiff knew he would be denied his job before December 1984, the Court will assume that the claim is timely.

evidence. (Order, p. 25.) Thus, the motion for summary judgment as to that claim was denied with leave to renew. Therefore, the remaining issue as to the Title I claim is whether there are any genuine issues of material fact in light of the clear and convincing evidence standard to be applied at trial.

Finally, the Court determined that plaintiff's state law claim was pre-empted by the LMRDA. Therefore, defendants were granted summary judgment on that claim.

*Discussion of Renewed Motion for Summary Judgment*

### A. Title III

■ Plaintiff originally asserted that the trusteeship was maintained for the illegal purpose of keeping him from taking his elected position. Title III of the LMRDA, 29 U.S.C. § 461, et seq., sets out the purposes for which a trusteeship may be established and maintained. 29 U.S.C. § 462. Section 464(c) states that a trusteeship is presumed to be validly maintained for eighteen months absent "clear and convincing proof that the trusteeship was not established or maintained in good faith for *a purpose* allowable under section 302 [29 U.S.C. § 462]." (Emphasis added.)

Pruitt does not assert that the trusteeship was not maintained for *"a purpose"* allowable under the Act. Nor does he assert that the *"overriding* purpose" (Plaintiff's Response, p. 3) or even a significant factor in maintaining the trusteeship was for an illegal purpose. In fact, unlike his earlier claim, plaintiff no longer actually contests the maintenance of the trusteeship. What he now asserts is the novel theory that "the job denial was a culminating act of maintenance for an unlawful purpose," (Plaintiff's Response, p. 4), the unlawful purpose being the quashing of the AGC/District Council lawsuit. The Court has already rejected this claim.

Plaintiff has not introduced any evidence to show that the trusteeship was main-

tained for an illegal purpose except what he had shown in response to defendants' initial motion for summary judgment regarding the imposition of the trusteeship. The Court already decided that this evidence was insufficient to raise a claim. It is not helpful to the Court's current determination—whether the trusteeship was *maintained* for an illegal purpose.

Even if plaintiff can show one illegal purpose for the maintenance of the trusteeship, one illegal purpose is not sufficient to raise a Title III claim. The question of what quantum of evidence plaintiff will need to meet the clear and convincing evidence standard in this area appears to be one not much discussed in court opinions or other literature. Logically, and from what little opinion exists, it appears that one illegal purpose among many legal purposes is insufficient to declare a trusteeship illegally maintained.

The U.S. Department of Labor, in an early report to Congress regarding these provisions, states an acceptable position on this issue:

> [I]f in fact a trusteeship is established for at least one of the purposes enumerated in section 302 of the Act, the validity of the trusteeship will not be affected merely because it may have been designed to accomplish other purposes not specified in the Statute. These other purposes, however, must not include any of the prohibited activities specified in section 303(a) [29 U.S.C. § 463(a)].

Union Trusteeships, Report of the Secretary of Labor to the Congress upon the Operation of Title III of the Labor–Management Reporting and Disclosure Act, at 36–37 (September 1962). The argument that a showing of "mixed motives" is insufficient to find a trusteeship either illegally imposed or maintained has been accepted by most of the courts which have considered it. *See Parks v. International Brotherhood of Electrical Workers*, 314 F.2d 886, 904–11 (4th Cir.1963),[6] *Interna-*

---

6. *Parks* involved the revocation of a local's charter. It did not involve a trusteeship. Suit was brought, alleging violation of Title I of the LMRDA. The Court found that mixed motives were insufficient to create a Title I claim. Arguably, then, this analysis should apply to Pruitt's Title I claim. But Pruitt asserts an individual harm, not a collective one. Therefore, by allow-

*tional Brotherhood of Electrical Workers Local 1186 v. Eli,* 307 F.Supp. 495, 506 (D.Ha.1969).[7] In *Eli,* the court held that, "[i]f any *one* of the motives professed by [defendants] withstands the test of § 302, it is now sufficient," 307 F.Supp. at 506.

Plaintiff does not contend that there were no legal purposes for maintaining the trusteeships. Nor does he claim a violation of 29 U.S.C. § 463(a). Because plaintiff sets out only one allegedly illegal purpose amidst an array of admittedly valid purposes for maintaining the trusteeship, the Court will not reach the question of what relationship the illegal purposes must bear to the legal ones in order for a court to find a trusteeship illegally maintained. In sum, the Court finds that there are not enough facts to raise a genuine issue regarding plaintiff's Title III claim. Therefore, plaintiff's claim under Title III of the LMRDA must be dismissed.

### B. Title I

■ As in the Title III claim, to overcome defendant's proof in support of summary judgment on plaintiff's Title I claim plaintiff must produce some evidence to demonstrate that there exists a genuine issue of material fact in light of the clear and convincing evidence standard to be applied at trial. In other words, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability....", *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "[T]he judge's function [at the summary judgment stage] is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 106 S.Ct. at 2511. Despite misgivings about plaintiff's ability

to meet its burden of proof at trial, the Court cannot at this stage say there is no jury issue.

Defendant contends that allowing plaintiff to raise essentially the same claims under the rubric of Title I would be anomalous in that the Court should not declare the trusteeship valid while declaring one of its actions illegal. (Memorandum in Support of Defendants' Renewed Motion for Summary Judgment (defendants' "Renewed Motion"), p. 17, n. 8.) This argument is not persuasive. To allow a trusteeship, in carrying out its legal purposes, to run roughshod over the rights of individuals cannot be the intent of Congress in enacting the statute. Congress' desire to allow trustees freedom to correct problems is protected by the clear and convincing evidence standard by which plaintiff must prove his claims. Therefore, plaintiff's Title I claim must be considered on its merits.

The main issue remaining concerning plaintiff's Title I claim is whether the motive behind his job denial was an effort by the national union either to retaliate against or to suppress plaintiff's exercise of his rights to meet and assemble and his right to sue under Title I.

In support of his claim that the motive for his job denial was retaliation, plaintiff has offered affidavits from Raymond Pressley, the Executive Secretary of the District Council, and his own son, John G. Pruitt.[8] These statements create some doubt as to the information and opinions upon which Patrick Campbell, President of the national union, based his determination to deny Pruitt his job. Further, Pruitt's admitted notoriety for speaking out raises an inference of motive to want to keep him from taking office.

---

ing Pruitt's arguments, the Court can protect the actions of the trustee on the whole while at the same time protecting the rights of the individual. The results in *Parks* are more appropriate to the general Title III claim here.

**7.** *Eli* is much closer factually to the instant case. The difference is that plaintiffs in *Eli* asserted that the *dominant* motive for imposing a trusteeship was to punish plaintiffs for involvement in a lawsuit brought against union officials by

outsiders. The court rejected plaintiffs' argument. The facts in Pruitt's case appear to be much less egregious.

**8.** Defendant requests that the affidavits of Pressley and Pruitt's son, John G. Pruitt, be excluded because of plaintiff's failure to identify them as witnesses in plaintiff's discovery answers or in a supplement thereto. The Court DENIES this request.

Defendants contend that only President Campbell's motives are relevant to this case. Clearly, the opinions of those who influenced that decision must be considered. Therefore, McGuffee's statements and Pruitt's discussions with other union officials are relevant. Where factual issues remain concerning the state of mind of a party, summary judgment is inappropriate. *Irwin v. United States,* 558 F.2d 249 (5th Cir.1977).

Although plaintiff's supporting evidence on his claims is weak, the Court feels that plaintiff has raised a genuine issue of material fact as to the motive for his job denial. Therefore, defendants' motion for summary judgment on plaintiff's Title I claim is denied.

For the above stated reasons, plaintiff's motion to reconsider is DENIED. Defendants' renewed motion for summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiff is ORDERED to submit the ruling of Judge Tidwell on plaintiff's motion to modify the protective order.